McLinden vs. Wentworth, imp.

McLINDEN vs. WENTWORTH, imp.

*January 11 — February 8, 1881.*

PARTNERSHIP.    *(1) Liability of new firm for debts of old.    (2, 3) Liability for money borrowed by one partner.    (4) Nonsuit.*

1. On the dissolution of a firm and the formation of a new one consisting in part of the same members, the new firm cannot be bound, without the consent of all its members, for the debts of the old.
2. One partner cannot bind the firm for money borrowed by him to pay for his share of the capital stock, especially where the lender knows for what purpose the money is obtained.

McLinden vs. Wentworth, imp.

3. A firm is not liable for a debt contracted by one partner on his individual responsibility, although the consideration goes into the firm business, if, as between the partners, the debt ought to be paid by the one who contracted it.

4. Upon the evidence in the case (stated in the opinion), this court holds that there was no error in nonsuiting the plaintiff in favor of the appellant.

TAYLOR, J., concurs in the judgment upon the ground that the note in suit, which was not given with appellant's knowledge or consent, nor executed in the proper name of any firm of which he was ever a member, was sold to plaintiff and bought by him as the note of appellant's co-defendants only, and plaintiff is *estopped* from alleging it to be the appellant's note, even if it was taken by the original payee to secure a debt due the latter from such a firm.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought by *Felix McLinden*, in his own behalf and as trustee of several other persons, against *R. B. Wentworth*, John P. McGregor and Cornelius Wheeler. The cause of action stated in the complaint is on a promissory note, alleged to be held and owned by the plaintiff in trust for the persons named, of which note the following is a copy:

" No. 8834.                                                       $12,000.
" PORTAGE, Wis., June 27, 1872.

" One day after date, for value received, we promise to pay the Columbia County Bank, or order, at the Columbia County Bank, $12,000.                                      WENTWORTH & Co."

Payments are indorsed thereon as follows: October 7, 1873, $2,000; November 4, 1873, $5,099.84; November 20, 1873, $292.57; July 31, 1875, $1,100.

A history of the inception of the note and the transfer thereof to the plaintiff is contained in the complaint, but it is unnecessary to repeat it here, because the facts as proved on the trial are fully stated in the opinion. The defendants McGregor and Wheeler did not answer. The defendant *Wentworth* answered, substantially denying all allegations in the complaint tending to make him liable on the note, and denying his liability thereon. On the trial of the action, the

circuit court nonsuited the plaintiff; and from the judgment of nonsuit entered in favor of the defendant *Wentworth*, the plaintiff appealed.

For the appellant there were briefs by *H. W. Lee*, his attorney, with *Sloan, Stevens & Morris*, of counsel, and oral argument by *Mr. Lee* and *Mr. Sloan*. To the point that defendant *Wentworth* was liable on the note as a partner, they cited Parsons on Part., ·95, 105, 114; *Saville v. Robertson*, 4 Durnf. & E., 720; *Young v. Hunter*, 4 Taunt., 582; *Gouthwaite v. Duckworth*, 12 East, 421; *Whitaker v. Brown*, 16 Wend., 510; *Church v. Sparrow*, 5 id., 223; *Walden v. Sherburne*, 15 Johns., 409; *Woodward v. Winship*, 12 Pick., 430; *Everitt v. Chapman*, 6 Conn., 347; *Tolman v. Hanrahan*, 44 Wis., 133; *Gardiner v. Childs*, 8 C. & P., 345; *Allen v. Coit*, 6 Hill, 318; *Bank of Rochester v. Monteath*, 1 Denio, 402; *Wright v. Hooker*, 10 N. Y., 51; 58 Barb., 290; 8 E. C. L., 54; *Onondaga County Bank v. De Puy*, 17 Wend., 47; *Wilkins v. Pearce*, 5 Denio, 541; *S. C.*, 2 Coms., 469; *Drake v. Elwyn*, 1 Caines, 184; *Carrier v. Cameron*, 31 Mich., 373; *Freeman v. Carpenter*, 17 Wis., 126; *Viles v. Bangs*, 36 id., 131.

For the respondent there was a brief by his attorneys, *G. J. Cox* and *J. H. Rogers*, and a separate brief by *L. S. Dixon*, of counsel, and oral argument by *Mr. Cox* and *Mr. Dixon*. They argued, *inter alia:* 1. A partnership is not liable for sums borrowed by individual members for the purpose of contributing to its capital. Especially is this true where the lender has knowledge of the purpose for which the money is borrowed, in which case the partnership would not be liable even though the firm note had been given. Collyer on Part. (Wood's ed., 1878), 310, 311; *Smith v. Craven*, 1 Cr. & J., 500; *Greenslade v. Dower*, 7 B. & C., 635; *Dickinson v. Valpy*, 10 id., 141; *Nicholson v. Ricketts*, 8 Weekly Reporter, 211; *Fisher v. Tayler*, 2 Hare, 218, 229; *Ketchum v. Durkee*, Hoff., 538; *Coster v. Clarke*, 3 Edw., 411; 5 Wait's Act.

McLinden vs. Wentworth, imp.

& Def., 150. 2. In this case it is entirely clear, upon the evidence, that the bank loaned the money on the credit of McGregor and Wheeler alone. The partnership was therefore not the debtor, and could not be made so without the consent of all the partners. *Peterson v. Roach*, 32 Ohio St., 374; *Jacques v. Marquand*, 6 Cow., 497; *National Bank v. Thomas*, 47 N. Y., 15; *Willis v. Hill*, 2 Dev. & Bat., 231; *Ex parte Hunter*, 1 Atk., 223; *Bevan v. Lewis*, 1 Sim., 376; *Emly v. Lye*, 15 East, 7; *Farmers' Bank v. Bayliss*, 41 Mo., 275; *Loyd v. Freshfield*, 2 C. & P., 325; *Gallway v. Mathew*, 10 East, 264; *Berkshire Woolen Co. v. Juillard*, 75 N. Y., 535; Collyer on Part., secs. 477–8; Edw. on Bills, 102; *Rich v. Davis*, 6 Cal., 141; *Doty v. Bates*, 11 Johns., 544; *Dob v. Halsey*, 16 id., 34; *Foot v. Sabin*, 19 id., 154; *National Bank v. Ingraham*, 58 Barb., 290. 3. Nothing but the use of the correct partnership name would bind the members of the firm. The true firm name being Wentworth, McGregor & Co., the members of this firm were not bound by the signature of Wentworth & Co. *Kerk v. Blurton*, 9 M. & W., 284; *Hambro v. Ins. Co.*, 3 H. & N., 789; *Stephens v. Reynolds*, 1 Fos. & Fin., 739; *Faith v. Richmond*, 11 A. & E., 339; *National Bank v. Thomas*, 47 N. Y., 15; *Williams v. Gillies*, 75 id., 197. 4. The receivers, in making sale of the note, did not sell or attempt to sell a cause of action against *Wentworth*. The assignment is set out in the complaint, and limits the right of action of the assignee. *Vilas v. Dickinson*, 13 Wis., 488; *Bishop v. Douglass*, 25 id., 696. It was an election on the part of the receivers as to whom they would hold. The election, having been made, was binding on them and their assigns. *Rawson v. Turner*, 4 Johns., 469; *Wright v. Wright*, 72 N. Y., 149; *Steinbach v. Ins. Co.*, 77 id., 498; *McElroy v. Mancius*, 13 Johns., 121. The court must give construction to the assignment set out in the complaint. *Martineau v. Steele*, 14 Wis., 272; *Hutchinson v. R'y Co.*, 37 id., 582. 5. In addition to the facts that the note was past due,

and not negotiable, the plaintiff had actual notice at the sale and in the written assignment of the note, that *Wentworth* was not expected to pay it. He therefore took it subject to all rights and equities of *Wentworth*. *De Witt v. Perkins*, 22 Wis., 473; *Potter v. Stranskey*, 48 Wis., 235; *Herrick v. Woolverton*, 41 N. Y., 581.

Lyon, J. The material facts of this case, conclusively established by the pleadings and uncontradicted evidence, are as follows: In 1858 or 1859, the defendant McGregor became the sole owner of the capital stock of the Columbia County Bank (the payee of the note in suit), located at Portage City, and continued such owner and its president until the bank closed, in 1873. The defendant *Wentworth* was engaged for many years at Portage City in the business of transportation and in the grain and lumber business. In March, 1867, *Wentworth* and McGregor entered into copartnership in the grain and transportation business under the firm name of "R. B. Wentworth & Co." That copartnership continued until the fall of 1868, when McGregor sold out his interest therein to one Godfrey, who, at that time, was *Wentworth's* partner in the lumber business. The firm of Godfrey & Wentworth continued, and all branches of the business were carried on by it, until March, 1870, at which time McGregor and Wheeler purchased Godfrey's interest therein. The business, in all its branches, was thereafter carried on by the three defendants under the firm name and style of "Wentworth, McGregor & Co." until 1873. When the copartnership of Wentworth, McGregor & Co. was formed, and during its continuance, McGregor was president and Wheeler cashier of the Columbia County Bank. Both firms transacted their business through the bank. On or about October 8, 1873, the bank closed its doors, having become insolvent. Proceedings were thereupon instituted against it in the circuit court of Columbia county, which resulted in the appointment of three receivers, to whom all of

the assets of the bank were transferred, and they proceeded to settle and close its affairs. About the time the receivers were appointed, McGregor and Wheeler assigned to them, either in writing or by parol, their interest in the property of the firm of Wentworth, McGregor & Co., as security for their indebt-edness to the bank. The note in suit represented a part, if not the most, of such indebtedness. The note passed to the re-ceivers as part of the assets of the bank, and the same is in the handwriting of Wheeler.

On September 26, 1873, and afterwards, there stood in the deposit ledger of the bank a balance of $3,242.06 to the credit of Wentworth, McGregor & Co. Immediately before the bank failed — probably the day before, — Wheeler drew $1,000 of this balance for himself, and $2,000 for McGregor. He afterwards informed *Wentworth* that he had done so, and those amounts were charged on the books of the firm to Mc-Gregor and Wheeler respectively, under date of October 21, 1873. Of the money so drawn by Wheeler, it is probable that $2,000 was applied to the note in suit by the indorse-ment of that sum under date of October 7, 1873, which was on the note when it came to the hands of the receivers. This seems apparent from the following entry in the cash book of the bank: "Tuesday, October 7, 1873. Bills and notes, W., McG. & Co., $2,000." The entry was evidently made in due course of business, and is not explained by any other hypothe-sis. Soon after the assignment of McGregor and Wheeler to the receivers, as above mentioned, the latter sold to *Went-worth* the interest of their assignors in the lumber of Wentworth, McGregor & Co., for $5,099.84. *Wentworth* paid the re-ceivers that sum, and they indorsed it on the note, which is the indorsement of November 4, 1873. The third indorse-ment, dated November 20, 1873, is the balance of the credit to Wentworth, McGregor & Co. on the books of the bank — $242.06,— increased $50.51 by an arrangement made before the bank failed between Wheeler and a depositor in the bank, and carried out by the receivers. The depositor had pur-

chased lumber of the firm to that amount, and the agreement was that the bank should charge the amount to him, and place it to the credit of the firm. The indorsement of $1,100, under date of July 31, 1875, was paid by *Wentworth* to the receivers for the interest of McGregor and Wheeler in the assets of the firm remaining after his purchase of the lumber. The cash book of the bank contains entries to "bills and notes" of the sums so indorsed by the receivers on the note in suit, as received of Wentworth, McGregor & Co.

In 1878, on the petition of the receivers, the circuit court authorized them to sell certain assets of the bank, including this note, at public auction. Notice was duly given and sale of such assets made pursuant to the order of the court. At such sale the plaintiff purchased the note in suit for $62. The sale was subsequently confirmed by the court. In the petition of the receivers to the court the note is thus described: "Note of Wentworth & Co., meaning J. P. McGregor and C. Wheeler, dated June 27, 1872,— $12,000;" and is included in a schedule of "doubtful and nearly worthless demands." The note is also described in the same terms in the order directing the assets to be sold, in the notice of sale, and in the formal assignment of the note executed by the receivers to the plaintiff. *Wentworth* had no knowledge of the existence of the note until the notice of sale was published, and he then gave it no attention, for the notice showed on its face that the receivers, representing the bank and its creditors, did not claim that he was liable to pay it, and did not propose to sell it as a demand against him, but only against McGregor and Wheeler. Moreover, there is no evidence impeaching the solvency of *Wentworth*. It was freely admitted, in the argument of the cause by counsel for the plaintiff, that at the time of the sale *Wentworth* was and still is a man of wealth, and abundantly responsible for the amount of the note. McGregor and Wheeler were insolvent. The fact that the note sold for but $62, when by its terms several thousand dollars were due upon it, shows pretty conclusively that no one concerned in the transaction supposed

McLinden vs. Wentworth, imp.

that *Wentworth* was liable upon it. The plaintiff put in evidence an account found in the general ledger of the bank, headed "R. B. Wentworth & Co.;" and it is mainly on this account that his learned counsel base the claim that there is evidence tending to show that *Wentworth* is liable on the note. This account cannot be intelligibly considered without inserting it here entire. It is as follows:

R. B. WENTWORTH & CO.

| 1867. | | | 1867. | | |
|---|---|---|---|---|---|
| March 8. To Cash...... | $3,500 00 | | March 8. Bal. folio, 227C. | $3,500 00 |

R. B. WENTWORTH & CO.

| 1867. | | | 1867. | | |
|---|---|---|---|---|---|
| July 1. | To folio, 129B. | $3,500 00 | Dec. 27. | By J. P. McG.. | $500 00 |
| Aug. 1. | To cash....... | 1,500 00 | | By balance .... | 4,500 00 |
| | | $5,000 00 | | | $5,000 00 |
| Jan. 6. | To balance.... | $4,500 00 | Nov. 3. | By cash........ | $7,851 59 |
| Mar. 13. | W. Kelly & Co. | 6,000 00 | Jan. 2. | By profit and loss | 648 41 |
| | | | | By balance .... | 2,000 00 |
| | | $10,500 00 | | | $10,500 00 |
| 1870. | | | | | |
| | To balance.... | $2,000 00 | May 25. | Int. returned... | $41 22 |
| March 9. | To cash, Godfrey ........ | 73 60 | July 2. | By cash ....... | 10,000 00 |
| | Notes taken at G. sale ..... | 2,500 00 | | Balance ...... | 1,617 10 |
| April 14. | Godfrey note.. | 2,650 00 | | | |
| | Interest ...... | 43 50 | | | |
| May 1. | Godfrey note.. | 2,650 00 | | | |
| | Interest ...... | 41 22 | | | |
| 19. | Wheat cap.... | 1,500 00 | | | |
| June 30. | Int. on acct... | 200 00 | | | |
| | | $11,658 32 | | | $11,658 32 |
| July 2. | To cash....... | $1,617 10 | Dec. 30. | By cash ........ | $10,000 00 |
| 20. | To cash....... | 10,000 00 | | Balance ..... | 2,017 10 |
| Dec. 30. | Interest to Jan. 1, 1871. | 400 00 | | | |
| | | | | Bal. forw'd to page 230.... | |
| | | $12,017 10 | | | $12,017 10 |

McLinden vs. Wentworth, imp.

### R. B. WENTWORTH & CO.

(Firm composed of John P. McGregor and C. Wheeler.)

| 1871. | | | 1871. | | |
|---|---|---|---|---|---|
| Jan. 3. To bal. forw'd, page 227.... | $2,017 | 10 | July 1. By cash........ | $12,000 | 00 |
| 13. To cash ...... | 10,000 | 00 | Balance ..... | 417 | 10 |
| June 28. To interest to July 1.. ... | 400 | 00 | | | |
| | $12,417 | 10 | | $12,417 | 10 |
| July 2. To balance.... | $417 | 10 | Dec. 30. By cash........ | $12,000 | 00 |
| 17. To cash ...... | 12,000 | 00 | Balance ..... | 917 | 10 |
| Dec. 30. To interest to Jan. 1, 1872. | 500 | 00 | | | |
| | $12,917 | 10 | | $12,917 | 10 |
| 1872. | | | 1872. | | |
| Jan. 2. To balance.... | $917 | 10 | June 28. By cash........ | $12,000 | 00 |
| 9. To B. & N.... | 12,000 | 00 | Balance ..... | 1,317 | 10 |
| June 29. To int. to July 1, 1872 ..... | 400 | 00 | | | |
| | $13,317 | 10 | | $13,317 | 10 |
| 1872. | | | | | |
| July 1. To balance.... | $1,317 | 10 | June 28. By cash........ | $500 | 00 |
| | | | Balance ..... | 817 | 10 |
| | $1,317 | 10 | | $1,317 | 10 |
| 1873. | | | | | |
| July 5. To balance.... | $817 | 10 | | | |

The testimony of McGregor (which is undisputed) shows that this was not an account between the firms, or either of them, and the bank, but was kept for the sole purpose of showing his individual transactions through the bank, and those of himself and Wheeler with the respective firms. The accounts of those firms were kept in the regular deposit ledger of the bank.

The evidence also shows that the first item in the account— $3,500 — was McGregor's share of the capital which he put into the firm of R. B. Wentworth & Co. at its formation, and that the $6,000 item, March 13, 1868, was additional capital

which he put into the business against an equal sum put in by *Wentworth*. This $12,000 was invested by the firm in an enterprise with others engaged in transportation, in which the parties operated together, dividing profits or losses. The only remaining charge in this account is a cash item of $1,500 under date of August 1, 1867, which is unexplained. By the application of payments to the first items in the account, this last charge is paid. The balance of $2,000 charged immediately preceding the entry of March 9, 1870, represents the loss of McGregor in this enterprise. The retaining of this balance of $2,000 in the account, after the firm of Wentworth, McGregor & Co. was formed, is accounted for by the fact that Wheeler agreed with McGregor to assume one-half of it. The charges under dates of March 9, April 14, and May 1, 1870, manifestly represent moneys drawn from the bank by McGregor and Wheeler to pay Godfrey. This is conceded by counsel for plaintiff. The only remaining charge made in 1870, "May 19, Wheat cap., $1,500," is not specifically explained by the evidence. But it sufficiently appears that it went into the firm as capital, which, as between the partners, McGregor and Wheeler ought to pay in. But whether it was part of the original capital with which the firm commenced business, or not, does not appear.

The sums which McGregor and Wheeler drew from the bank and paid to Godfrey, represented the capital paid in by them in the formation and organization of the firm of Wentworth, McGregor & Co., and (either with or without the $1,500 item of May 19th) constituted one-half the capital with which that firm commenced business. The other half was furnished by *Wentworth*, and consisted of his one-half interest in the property of Godfrey & Wentworth. The new firm was entirely distinct from and unconnected with the old firm of R. B. Wentworth & Co., which ceased to exist in 1868. All of the items for $10,000 and $12,000, respectively, on both sides of the account, entered with a single exception as cash, represent

notes given and surrendered. The exception is on the debit side of the account, under date of January 9, 1872, where the entry is correctly made to B. & N.,— meaning, of course, bills and notes,— $12,000. This entry indicates the cancellation of a note for that amount, entered on the other side of the account as cash, under date of December 30, 1871. The note in suit is entered as cash under date of June 28, 1872, and is the only one which is not cancelled by a corresponding entry on the other side of the account. From this analysis of the account it will readily be seen that no money drawn from the bank is included in it, except the balance of $2,000 which McGregor lost in the enterprise before mentioned, the money which McGregor and Wheeler drew to furnish their part of the capital in the formation of the firm of Wentworth, McGregor & Co., in 1870, and the $1,500 item of May 19, 1870. All charges in the account after May 19, 1870, consist of interest and cancelled notes. Hence, the last money drawn from the bank which enters into the consideration of the note in suit, is the $1,500 charged under the last-mentioned date.

Counsel for plaintiff have selected a passage from the testimony of McGregor, in which he says: "If the freighting or grain business was done in the name of R. B. Wentworth & Co., it is quite probable that note was made and discounted by the bank, and the proceeds placed to the credit of R. B. Wentworth & Co. on the depositors' ledger, where the accounts of customers of the bank were kept." Counsel claim that this testimony refers to the note in suit. It is, however, clearly manifest from the context, as well as from the testimony quoted, that the witness was not speaking of this note, but of a note — more probably notes — which had been so used in the business of the old firm.

We must therefore hold that the following propositions of fact are conclusively established by the evidence: (1) The consideration of the note in suit is made up of the $2,000 balance which stands charged in the above account against the

old firm of R. B. Wentworth & Co.; the moneys drawn from the bank by McGregor and Wheeler with which they purchased Godfrey's interest in the firm property of Godfrey & Wentworth, or, what is the same thing, which they invested as their share of the capital stock in the formation of the new firm of Wentworth, McGregor & Co.; the $1,500 charged in the account under date of May 19, 1870; and the interest on those sums. (2) That, as between the three copartners in the last-named firm, it belonged to McGregor and Wheeler to pay all of the above sums, and hence to pay the note. (3) That *Wentworth* has not agreed to pay any of the above sums, did not authorize the giving of the note, and has done no act in ratification of it.

It requires no argument to show that the new firm of Wentworth, McGregor & Co. could not be bound for the debts of the old firm of R. B. Wentworth & Co., without the consent of all the members of the new firm. It is also well settled, as the authorities cited by the learned counsel for the respondent abundantly show, that one partner cannot bind the firm for the money borrowed by him to pay the share of the capital which he stipulated in the partnership agreement to pay in the first instance. The indebtedness for such a loan is in no correct sense a partnership debt, especially when (as in this case) the person or bank loaning the money knows the purpose for which it was obtained. Furthermore, we are aware of no rule of law which will hold a firm liable for a debt contracted by one partner exclusively on his individual responsibility, although the consideration for the debt goes into the firm business, if, as between the partners, the debt ought to be paid by the partner contracting it, and not by the firm. Directly the opposite rule prevails. Story on Partnership, § 134, and cases cited. It follows from these principles, applied to the facts of the case, that had the note in suit been given in the name of R. B. Wentworth & Co., it could not have bound *Wentworth* beyond the $2,000 balance standing charged to

that firm. Had it been given in the name of Wentworth, McGregor & Co., he could not have been held beyond the $1,500 charged in the account under date of May 19, 1870. This is the most favorable view for the plaintiff that can be taken of the case upon the evidence. But the note was not given in the name of either firm. It is signed "Wentworth & Co.," and the proof is conclusive that no such firm, in which the defendant *R. B. Wentworth* was a partner, ever existed. As between the partners, the indebtedness for which the note was given was that of McGregor and Wheeler alone, and the note was given in the name of a fictitious firm; at least, of a firm in which the defendant *Wentworth* was never a partner. Besides, it was proved affirmatively that the note represented an indebtedness of McGregor and Wheeler to the bank, and was used for that purpose. The conclusion seems inevitable that *Wentworth* is not liable on the note as a partner in either firm.

But counsel argued with much earnestness that the assignment of the note to the plaintiff carried with it the original indebtedness for which it was given, and hence that if *Wentworth* is not liable on the note, he is yet liable in this action for any portion of the consideration of the note properly charged against either firm in which he was a partner.

We will assume for the purposes of the case (but do not so hold), that this proposition is substantially correct, and, further, that it was competent for McGregor to charge the firm of R. B. Wentworth & Co. with the balance of $2,000, and for McGregor or Wheeler to charge Wentworth, McGregor & Co. with the $1,500 item under date of May 19, 1870, in the above account. The question remains, however, whether either of these items was ever made a charge against either firm. We think that no inference in support of an affirmative answer to this question can properly be drawn from the fact that the above account from the general ledger is headed "R. B. Wentworth & Co.;" for the account runs through the time

of both firms, and it shows on its face who were intended to be charged by the entry: "Firm composed of John P. Mc-Gregor and C. Wheeler." Besides, the regular accounts of both firms with the bank were kept in other books. That of the firm of R. B. Wentworth & Co. is alone preserved in the record before us, and it shows no unpaid balance against the firm.

There is an aspect of this case, not before mentioned, which becomes important in determining the question under consideration. The plaintiff has succeeded to the rights of the bank by his purchase of the note, and to those only. If the bank, before its failure, could not have maintained an action against either firm on the note, or for the original consideration of the note, the plaintiff cannot. McGregor was the owner and president of the bank, and Wheeler was its cashier. They were the general agents of the bank, with plenary power to conduct and administer its affairs. Notice to them was notice to the bank; and their acts, within the limits of the law, affecting the bank, bound the bank. They drew money from the bank to make their respective investments in the firms equal to the investments of *Wentworth*, and used it for that purpose; but they drew it upon their individual responsibility, and, so far as we can gather from the record, the same was charged in their individual accounts. Certainly, it was not charged to either firm. On the contrary, some portion of it at least was passed to the credit of the firms, or one of them. In short, the bank knew that, as between the three partners, every dollar of the money was drawn and used to discharge the individual obligations of McGregor and Wheeler alone to the respective firms, and it loaned them the money on their individual credit alone. It never charged the money to the firms, and never claimed that the firms were liable to repay it. It is perfectly clear that the bank before its failure could not have maintained an action against either firm, or against *Wentworth*, for any part of these advances, nor upon the note in suit given to cover them.

Our conclusion is, that there is no evidence tending to show that *Wentworth* is liable upon the note or for the original advances, and hence that the nonsuit was properly granted. The evidence proved, or tended to prove, other facts not herein stated; but their bearing upon the case is so doubtful or remote that a verdict for the plaintiff, based upon them, could not be upheld. It is not deemed necessary to make further reference to them. Some objections to the sufficiency of the answer and the procedure on the trial were argued, but they do not seem to be of sufficient importance to require discussion here. It has been thought best to dispose of the appeal on the merits, disregarding any merely technical objections or exceptions. Neither is it necessary to consider whether all of the parties beneficially interested in the proceeds of the note should have been joined as plaintiffs.

The judgment must be affirmed.

TAYLOR, J. I concur in the opinion that the plaintiff ought not to recover in this action, as against the appellant, for the reason that the evidence conclusively shows that the receivers of the bank sold the note upon which this action is brought, signed "Wentworth & Co.," as the note of "McGregor & Wheeler" alone, and not as the note of "Wentworth, McGregor & Wheeler;" that the plaintiff bought the note as the note of McGregor & Wheeler, and the written assignment transferred to them the note of McGregor & Wheeler, and not the note of Wentworth, McGregor & Wheeler. They are therefore estopped from now insisting that it is the note of Wentworth, McGregor & Wheeler. The note, not having been signed with the firm name of "Wentworth, McGregor & Wheeler," and having been given without the knowledge or consent of said *Wentworth,* he cannot be held liable thereon. *Bank v. Thomas,* 47 N. Y., 15. The plaintiff, having bought the note of McGregor & Wheeler only, he cannot, by virtue of such purchase, recover upon an account which may be due

to the bank from the firm of Wentworth, McGregor & Wheeler, even though the note may have been given to the bank to secure the payment of the debt of such firm. The plaintiff is in no better position to recover upon the account than he would have been had the note purchased by him been signed by McGregor and Wheeler with their individual names. In order to make the transfer of a note transfer the original indebtedness which it was given to secure, the note so transferred must bind all the parties owing the original debt.

*By the Court.*— Judgment affirmed.