WHITFORD and others, Respondents, vs. MOEHLENPAH and others, imp., Appellants.

*April 4—May 8, 1928.*

For the appellants there were briefs by *Churchill, Bennett & Churchill* of Milwaukee and *Ekern & Meyers* of Chicago, attorneys, and *Luther F. Binkley* of Chicago, of counsel, and oral argument by *Mr. W. H. Churchill* and *Mr. Binkley*.

For the respondents there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Clark M. Robertson,* of counsel, all of Milwaukee, and oral argument by *Mr. Robertson.*

Rosenberry, J. By the complaint it is alleged that the Bankers Finance Corporation, predecessor to the Securities Corporation, entered into a certain trust agreement in writing with the defendant E. A. Reddeman, wherein it was proposed to issue and sell the obligations of the company thereunder and the company's collateral notes to be issued in denominations of $500 or multiples thereof, in the following form:

"Bankers Finance Corporation,
"Milwaukee, Wisconsin.
"Rural Credit Collateral Trust Notes.  Series 'AB'
"No. AB                                                    $500.
"The Bankers Finance Corporation, for value received, promises to pay the bearer on —— five hundred dollars ($500) in lawful money of the United States of America, at the office of the National Bank of Commerce, in the city of Milwaukee, Wisconsin.

"This is one of the collateral notes issued under and secured by a certain trust agreement between the Bankers Finance Corporation and E. A. Reddeman, of Milwaukee, Wisconsin, as trustee, dated the thirty-first day of January, 1925. For a statement of the nature and extent of the security and of the rights of the holders of said notes under the trust agreement and the terms and conditions under which they are issued and shall be issued and secured, reference is made to the trust agreement. All the notes issued or to be issued under the trust agreement, at any time outstanding, shall be ratably and alike secured by the trust agreement. This note shall not become obligatory until the certificate hereon shall have been signed by the said trustee.

"In witness whereof, Bankers Finance Corporation has caused this collateral note to be signed by its president and treasurer, attested to by its secretary, and its corporate seal to be hereto affixed.

"Milwaukee, Wisconsin, ——, 1925.
"Bankers Finance Corporation.
"By —— ——, President,
"—— ——, Treasurer.
"Attest: —— ——, Secretary."

(Corporate seal)

By said trust agreement it was further provided that the said E. A. Reddeman as trustee should indorse upon said notes a certificate in the following form: "It is hereby certified that this collateral note is one of the collateral notes mentioned in the trust agreement referred to within. E. A. Reddeman, Trustee."

The notes issued and so indorsed by the trustee were to be secured by certain collateral to be deposited with the trustee from time to time. The collateral notes were to be issued in varying amounts from month to month and from time to time upon the Securities Company assigning to and depositing with the trustee the collateral specified in the trust agreement.

It was further provided that as said notes were assigned and deposited with the trustee they should be entered in a schedule and should form a part of the trust fund. Such schedule was to be identified by a certificate signed by the company at the end thereof in the following form, to wit:

"Schedule of notes assigned by the Bankers Finance Corporation to and deposited with E. A. Reddeman as trustee for the holders of the company's collateral notes, Series 'AB,' issued under and pursuant to the provision of a certain trust agreement bearing date of January 31, 1925, between the said Bankers Finance Corporation and the said E. A. Reddeman, as trustee.

"Dated —— ——."

All collateral notes issued under the trust agreement were to be ratably secured. It was furthermore provided in the trust agreement by article II that at or before the time of the presentation of the collateral notes to said trustee for authentication, the company should deposit and leave with the trustee certain notes and obligations therein described in words and figures as follows:

"(a) 1. Notes executed by individuals, firms, and/or corporations, residing in or existing under the laws of, and having their principal place of business in Wisconsin, who

are manufacturers or dealers in agricultural implements or other articles used by farmers in connection with agriculture, and herein termed 'Implement Dealers Notes.' Such notes shall be accompanied and collateralized by notes executed by farmers to such dealers or manufacturers in the ratio of at least $120 of such farmers' notes for each $100 of such implement dealers' notes; or 2. Notes executed by individuals, firms and/or corporations, collateralized by notes or conditional sales contracts or partial payment contracts on unmatured open accounts, such collateral to be in the ratio of at least $110 face value of collateral to $100 face value of the notes secured thereby; or 3. Notes executed by individuals, firms, or corporations residing in or existing under the laws of the state of Wisconsin, who are engaged in the business of agriculture, managing, directing, or working farms, or notes of individuals or corporations collateralized by notes of individuals, firms, or corporations who are engaged in the business of agriculture, the proceeds of such notes being used exclusively for agricultural purposes within the state of Wisconsin, said notes to be either guaranteed or indorsed by one or more individuals or Wisconsin banks or secured by chattel mortgage; or 4. Notes of farmers secured by mortgage on farm real estate having a maturity of not over one and one-half years from the date of the company's collateral notes secured thereby; or 5. Purchase-money obligations the proceeds of which have been used or are to be used in purchasing, carrying, or marketing any motor, motor vehicle, truck, tractor, farm machine, farm implement or equipment, internal combustion engine, trailer, refrigeration system, household utility, lighting system or any part thereof or accessory thereto, such purchase-money obligations to be in at least the ratio of $110 to each $100 of company's collateral notes. All such notes shall be accompanied with assignments duly vesting the total thereof, and to the collateral accompanying the same in the trustee, and shall be to a principal amount at least equal to the principal par value of the company's collateral notes authenticated; such notes and assignments to be accompanied by the schedule thereinbefore mentioned.

"Or in lieu of aforesaid implement dealers' notes or other notes as above provided, cash, company's collateral notes

issued under this or prior similar indentures at principal par value, or municipal or U. S. government securities at the value to not higher than 5 % under the market value thereof as quoted on the day of deposit (exclusive of interest), or other government, utility, or corporation bonds (to be agreed upon with the trustee) at a value not higher than 10 % under the market value thereof as quoted on the day of deposit (exclusive of interest), to an amount at least equal to the principal par value of the collateral notes to be authenticated on the security thereof."

It was furthermore provided by article II of the trust agreement that the deposit therein provided for might from time to time be made in any or either of the forms therein described or in any combination of said forms to the amount requisite to provide security as therein defined for said company's collateral notes to be authenticated, and that the trustee might decline to receive any notes which in his judgment should fail to conform with said trust agreement in any of the particulars therein set forth, and that said trustee should thereupon enter said notes and collateral in a schedule thereof and should authenticate the company's notes so presented for authentication and deliver the same to said company or to its order.

It was provided by article II that at the time of presentation of any of the company's collateral notes to the trustee for authentication, the company should deposit and leave with the trustee, in addition to the notes and obligations therein described, the following:

"(b) A certified copy of a resolution of the board of directors of the company authorizing the issue of said collateral notes.

"(c) A certificate by said company under its seal that each note so assigned and deposited is a valid note executed by the maker hereon in accordance with subsection (a)."

The defendant Reddeman accepted the trust and entered upon the performance of his duties as trustee. The proce-

dure by which the Wisconsin Mortgage & Securities Company succeeded to the assets and liabilities of the Bankers Finance Corporation is set out in detail. It is alleged that there are now outstanding of the collateral trust notes provided for by the agreement of the principal aggregate sum of $796,000, which is set out in the schedule annexed to the complaint. The creation of the Noteholders' Protective Committee and the powers of the committee under the agreement are set out in detail.

It is further alleged that on February 21, 1927, the defendant Reddeman as trustee demanded further securities in. accordance with the terms of the trust agreement, which the Securities Company failed to furnish, and that there is now due on account of the rural credit collateral trust notes $437,800. The default of the trustee is alleged in the following language:

"17. That notwithstanding the provisions of said trust agreement that at or before the time of the presentation of any of the defendant company's collateral trust notes to the trustee for authentication the company should deposit and leave with the trustee securities of the kind and character therein described in article II (a) thereof, as hereinbefore alleged and set forth, to a principal amount at least equal to the principal par value of the company's collateral notes so to be authenticated, and in violation thereof, as these plaintiffs are informed and verily believe, the defendant Wisconsin Mortgage & Securities Company from time to time presented or caused to be presented to the defendant E. A. Reddeman, as trustee as aforesaid, the rural credit collateral trust notes now issued and outstanding as aforesaid for authentication or certification by said Reddeman as trustee, without having deposited or left with him the full amount of the securities so required to be deposited and left with him as trustee at or before the time of the presentation of such collateral trust notes for authentication. as aforesaid; and as these plaintiffs are informed and believe the defendant E. A. Reddeman, in utter disregard of the requirements of the trust agreement as aforesaid, authenticated and certified said collateral trust notes in the manner hereinbefore alleged

without having received on deposit or having had deposited with him the full amount of the securities so required to be deposited and left with him as a condition precedent to the authentication by him of said collateral trust notes, in the manner following, to wit:

"(a) That said trustee accepted notes executed by individuals, firms, and corporations not residing in or existing under the laws of or having their principal place of business in Wisconsin and/or who were not manufacturers or dealers in agricultural implements or other articles used by farmers in connection with agriculture, and that the 'implement dealers' notes' as described and set forth in paragraph seven of this complaint and in article II (a) 1 of the trust agreement hereinbefore referred to were not accompanied and collateralized by notes executed by farmers to dealers or manufacturers in the ratio of at least one hundred twenty dollars ($120) of such farmers' notes for each one hundred dollars ($100) of such implement dealers' notes, all in contravention of said article II (a) 1 of said trust agreement as set forth and alleged in paragraph seven of this complaint.

"(b) That said trustee accepted notes executed by individuals, firms, and corporations not collateralized by notes or conditional sales contracts or partial payment contracts on unmatured open accounts, and, where such notes were so collateralized, such collateral was not in the ratio of at least one hundred ten dollars ($110) face value of such collateral to one hundred dollars ($100) face value of the notes secured thereby, all in contravention of article II (a) 2 of said trust agreement as set forth and alleged in paragraph seven of this complaint.

"(c) That said trustee accepted notes executed by individuals, firms, and corporations not residing in or existing under the laws of the state of Wisconsin or not engaged in the business of agriculture, managing, directing, or working farms, and which said notes were not either guaranteed or indorsed by one or more individuals or Wisconsin banks or secured by chattel mortgage, and where such notes were executed by individuals, firms, or corporations residing in or existing under the laws of the state of Wisconsin and who were engaged in the business of agriculture, managing, directing, or working farms, such notes were not guaranteed or indorsed by one or more individuals or Wisconsin banks

or secured by chattel mortgage, all in contravention of the terms and provisions of said article II (a) 3 of said trust agreement, as herein alleged and set forth in paragraph seven of this complaint.

"(d) That said trustee accepted notes of individuals or corporations collateralized by notes of individuals, firms, and corporations who were not engaged in the business of agriculture and the proceeds of such notes were not being used exclusively for agricultural purposes within the state of Wisconsin, and, where such notes were executed by individuals, firms, or corporations engaged in the business of agriculture, the proceeds of such notes were not used exclusively for agricultural purposes within the state of Wisconsin, and such notes were not in either of the cases herein set forth guaranteed or indorsed by one or more individuals or Wisconsin banks or secured by chattel mortgage, all in contravention of article II (a) 3 of said trust agreement as set forth and alleged in paragraph seven of this complaint.

"(e) That said trustee accepted notes of farmers secured by mortgages on farm real estate having a maturity of over one and one-half years from the date of the company's collateral notes secured thereby, all in contravention of article II (a) 4 of said trust agreement as set forth and alleged in paragraph seven of plaintiffs' complaint herein.

"(f) That said trustee accepted purchase-money obligations, the proceeds of which had not been used or were not to be used in purchasing, carrying, or marketing motors, motor vehicles, trucks, tractors, farm machinery, farm implements or equipment, internal combustion engines, trailer, refrigeration system, household utility lighting system or any part thereof or accessory thereto, and, where such purchase-money obligations had been so used or were to be so used, they were not in a ratio of one hundred ten dollars ($110) to each one hundred dollars ($100) of the company's collateral notes, all in contravention of article II (a) of said trust agreement as set forth and alleged in paragraph seven of the plaintiffs' complaint herein.

"(g) That said trustee accepted securities other than municipal or United States government securities or other government, utility, or corporation bonds, all in contravention of said article II (a) of said trust agreement as set forth and alleged in paragraph seven of the plaintiffs' complaint herein.

"(h) That said trustee accepted as collateral farm mortgages and other obligations upon which defaults had previously occurred and which were then, at the time of such acceptance, in default, all in contravention of article II (a) of said trust agreement as set forth and alleged in paragraph seven of the plaintiffs' complaint herein, and in contravention of the spirit and intent of the trust agreement as in this complaint set forth."

Further particulars and details relating to the deposit under the trust agreement and the issuance of notes are set out which are not material to the questions raised on this demurrer.

It is further alleged that the Securities Company is wholly insolvent and unable to pay its indebtedness; that the collateral held by Reddeman as trustee is much of it past due and unpaid and wholly inadequate as security for the payment of the unpaid balance due and owing on the rural credit collateral trust notes issued and outstanding, and plaintiffs have no adequate remedy at law.

The relationship of the defendants other than Reddeman and the Securities Company and the grounds of their liability are set forth in the following language:

"21. Plaintiffs further allege that it was represented by said Wisconsin Mortgage & Securities Company to the purchasers of said rural credit collateral trust notes so issued and outstanding as aforesaid, that each one of said notes was issued under and secured by the trust agreement aforesaid, reference to which trust agreement was made for a statement of the nature and extent of the security and of the rights of the holders of said notes under said trust agreement and the terms and conditions under which they were issued and should be issued and secured, and that said notes should not be valid or become obligatory for any purpose until the certificate of authentication indorsed thereon should have been executed by the trustee under the trust agreement, and that the defendant Reddeman, when he authenticated and certified said rural credit collateral trust notes, knew or ought to have known that said notes were being authenticated or certified by him for the purpose of the sale thereof by said Wis-

consin Mortgage & Securities Company, and that they would be sold upon the representations aforesaid and that the purchasers thereof would purchase the same upon the faith and credit of their authentication or certification by said trustee. That such representations by the said defendant Wisconsin Mortgage & Securities Company, in so far as they related to the nature and extent of the security as required by the trust agreement herein alleged, were false and fraudulent, in that the said security or large portions thereof were not of the nature and extent as required by the terms of said trust instrument, as hereinbefore alleged in paragraph seventeen of this complaint, as such defendant well knew.

"22. That the defendants H. A. Moehlenpah, S. M. Smith, G. D. Bartlett, E. A. Reddeman, C. S. Morris, J. J. Jamieson, John Rose and W. E. Sprecher were at all times herein mentioned directors of the said defendant Wisconsin Mortgage & Securities Company, and the defendants H. A. Moehlenpah, S. M. Smith, John Rose, R. H. Watson, and L. T. Hammond were at all times herein mentioned officers of the said defendant Wisconsin Mortgage & Securities Company, to wit, the president, vice-president and treasurer, secretary, and assistant secretaries, respectively.

"23. That, as plaintiffs are informed and verily believe, the said defendants H. A. Moehlenpah, S. M. Smith, John Rose, R. H. Watson, and L. T. Hammond, managing officers of said defendant Wisconsin Mortgage & Securities Company, had actual knowledge of the improper and unlawful issuance of rural credit collateral trust notes hereinbefore alleged to be improperly and unlawfully issued, and fraudulently instigated, aided, assisted, abetted, and participated in the violations of the trust agreement with the said defendant trustee, E. A. Reddeman, as hereinbefore alleged.

"24. That, as plaintiffs are informed and verily believe, the said defendants H. A. Moehlenpah, S. M. Smith, G. D. Bartlett, E. A. Reddeman, C. S. Morris, J. J. Jamieson, John Rose, and W. E. Sprecher, as such directors, caused to be printed upon each of the rural credit collateral trust notes the indorsement as alleged and set forth in paragraph one of this complaint, and that said representations contained on the face of said rural credit collateral trust notes were false, in that the nature and the extent of the security, as represented

by the trust agreement therein referred to, was not according to the tenor and requirements thereof, which said fact, as plaintiffs are informed and verily believe, the said defendants and each of them well knew at the time of the execution and delivery of said rural credit collateral trust notes; that the said defendants, as directors of said defendant corporation, Wisconsin Mortgage & Securities Company, made such false statements on the face of the rural credit collateral trust notes and on the indorsement thereof knowing them to be false, for the purpose of inducing the purchasers, whom these plaintiffs represent, and others who might purchase the same, to believe that said rural credit collateral trust notes were issued according to the provisions and requirements of said deed of trust therein described and hereinbefore alleged, and that the said defendants, and each of them, were at all times during the issuance and sale of the said rural credit collateral trust notes, as aforesaid, reckless and careless whether the statements contained therein, as hereinbefore alleged, were true or false, and the said purchasers, whom these plaintiffs represent, and other purchasers of the said rural credit collateral trust notes, relied at all times, in purchasing the same, upon the statements therein contained.''

The defendants moved to make the complaint more definite and certain and to strike therefrom paragraphs 21, 23, and 24 as scandalous and impertinent on the ground that the same purported to complain of alleged wrongs to persons other than plaintiffs and of alleged wrongs not cognizable in the action. On behalf of the joint demurrants it is contended that they cannot be held liable to the plaintiffs because of their being officers or directors of the corporation, and second, that the complaint does not contain sufficient completed facts to assert any liability against the appellants.

In the oral argument it was contended also that if the complaint stated any cause of action against the defendants other than the trustee and the Securities Company it stated a cause of action sounding in tort; that the language of the agreement creating the Noteholders' Protective Committee was not sufficient to amount to an assignment of a cause of ac-

tion which might exist in favor of the purchasers of the Securities Company's notes, and that therefore the complaint failed to state a cause of action.

We shall first undertake to determine the nature of the liability, if any, charged by the complaint as against the appealing defendants. The complaint first sets out the duties of the trustee, which were to receive under the certificate of the Securities Company certain collateral, schedule the same, and against the collateral so scheduled to issue the notes of the Securities Company. By the terms of the trust agreement the corporation by its officers and directors was to attach to the collateral tendered to the trustee its certificate certifying that the collateral tendered to the trustee complied with the requirements of the trust agreement. It is next alleged in the plainest possible language that the trustee violated his trust by accepting collateral which he knew was not tendered in compliance with the terms of the trust agreement; that he nevertheless, in violation of the trust agreement, proceeded to issue and authenticate notes of the Securities Company, and that the Securities Company, which was chargeable with knowledge of all the facts, proceeded to sell such authenticated notes as notes duly issued pursuant to the terms of the trust agreement.

It further appears from the allegations of the complaint that by reason of this conduct, that is, the acceptance of securities other than those provided for by the trust agreement by the trustee and sale by the Securities Company of the notes issued against said improper securities, the Securities Company is now insolvent and purchasers of its notes are likely to sustain large losses.

The theory of the plaintiffs is that one who knowingly assists a trustee in the violation of his trust and the mismanagement of the trust fund is liable to third parties to the same extent and in the same manner as the trustee himself is liable. That the trustee is liable for violation of his trust

and mismanagement of the trust property is plain. *Conover v. Guarantee Trust Co.* 88 N. J. Eq. 450, 102 Atl. 448, affirmed 89 N. J. Eq. 584, 106 Atl. 890. The general rule is that those who assist the trustee in the violation of his trust or the mismanagement of the trust property are liable with him. 39 Cyc. "Trusts," 527, cases cited note 54. It has been held over and over again that as to stockholders and creditors the directors of a corporation stand in the relation of a fiduciary, and a breach of their duty as such, by means of which corporate assets are lost and dissipated to the damage of stockholders and creditors, makes the directors participating therein personally responsible. *Cream City M. P. Co. v. Coggeshall,* 142 Wis. 651, 126 N. W. 44. However, the complaint in this action does not seek to charge the directors with liability merely as such, but because, as alleged in the complaint, they knowingly and intentionally assisted the trustee in the violation of his trust and the mismanagement of the trust property. The appealing defendants as directors of the corporation undertook on behalf of the corporation to certify as to the character of the securities tendered to the trustee. In violation of that duty and in order to procure from the trustee duly authenticated notes which were not secured in the manner provided by the trust agreement, they made false certificates; thereafter the notes so procured were sold to those now represented by the Noteholders' Protective Committee. It may well be that the facts set out in the complaint might be construed as stating a cause of action in tort for fraud and deceit. That would be very clear if the complaint contained an allegation that the parties connived or conspired to defraud the purchasers or proposed purchasers of the Securities Company notes, but it is not necessary to so construe it. The enforcement of a trust, the power to compel an accounting by a trustee and to hold those liable with him for mismanagement of the trust, are well recognized and well defined powers of a court of equity.

The liability of the various parties can only be determined by an accounting, and it is considered, therefore, that the complaint states a good cause of action against all of the defendants, and that the liability sought to be enforced is not that of a tortfeasor but of a trustee and those who are liable with him as and for a mismanagement of the trust. It is not necessary for the Noteholders' Protective Committee to have any other greater rights than it is conceded that they have under the agreement in order to enforce such liability.

There are not many cases dealing with situations of the sort disclosed by the allegations of the complaint in this case. The investment trust of which this is a form is a comparatively new financial device—at least in this section of the country. If directors of a corporation engaged in this business can do what it is alleged the directors of this corporation did and escape liability on the ground that they complied in form with the terms of the trust agreement although violating it in substance at almost every point, a new method of defrauding confiding and credulous investors will be disclosed without corresponding liability on the part of those who perpetrate the wrong.

There is nothing new or novel in the theory of the plaintiffs' complaint. Those dealing with persons acting in a fiduciary character are at all times required to take notice of that fact, and they cannot act for their own advantage or for the advantage of those whom they represent in disregard of the fiduciary relation which actually exists. *Brovan v. Kyle,* 166 Wis. 347, 165 N. W. 382. A common application of the principle is the case of a partner who attempts to discharge a personal obligation by the use of partnership assets. *McLinden v. Wentworth,* 51 Wis. 170, 8 N. W. 118, 192; 30 Cyc. 502. There are many other like cases. According to the allegations of the complaint the trustee violated the terms of the trust agreement in numerous and important particulars, and at every step in the transaction he required

and had the active co-operation of the corporation, its officers and directors, in the mismanagement of the trust property. Those who did so co-operate and assist him are jointly liable with him upon the plainest and most fundamental principles of law and equity. Those charged in any way with responsibility for the management of trust funds or trust property are required to exercise good faith and diligence in the discharge of their obligations, in most cases the utmost good faith, and any breach of that duty creates liability.

It is clear that the complaint is not subject to a motion to make more definite and certain, nor is it subject to a motion to strike paragraphs 21, 23, and 24, nor is there a misjoinder of causes of action. There being but one ground of liability alleged, that is, breach of trust and mismanagement of trust property, the complaint states a good cause of action.

*By the Court.*—Order affirmed.