HOLMAN *v.* MOORE.

1. CORPORATIONS—OFFICER MAY NOT PROFIT PERSONALLY.
    Officer of corporation may not make profit for himself in discharge of his official duties.

2. BANKS AND BANKING—NATIONAL BANKS—LIABILITY OF OFFICER FOR MISAPPLICATION OF FUNDS.
    Cashier of bank is liable for commissions paid to himself and another in the purchase of inadequately secured mortgages for national bank; said action constituting wilful misapplication of bank's funds (12 USCA, §§ 371, 592, 595).

As to officer of corporation making profit out of office, see annotation in 2 L. R. A. 534; 64 A. L. R. 784.

3. SAME—LIABILITY OF THIRD PERSONS.

Attorney's participation with bank cashier in purchasing inadequately secured mortgages for national bank and acceptance of commissions therefor is treated as aiding and abetting in wilful misapplication of bank's funds (12 USCA, §§ 371, 592, 595).

4. SAME—DAMAGES—MEASURE OF DAMAGES.

In action by receiver of national bank against cashier and another for damages sustained by reason of defendants' conspiracy 'to purchase inadequately secured mortgages for bank and pay themselves commissions, measure of damages is loss sustained by said wrongful act.

5. LIMITATION OF ACTIONS—CONCEALMENT OF FRAUD:

Where bank cashier concealed from other officers and directors fraudulent misapplication of bank's funds, action thereon brought by receiver within two years after discovering said fraud is not barred by statute of limitations, although more than six years had expired (3 Comp. Laws 1929, §§ 13976, 13983).

6. APPEAL AND ERROR—FAILURE TO APPEAL.

Where plaintiff took no appeal from judgment in his favor, amount thereof may not be increased by Supreme Court.

Appeal from Allegan; Miles (Fred T.), J. Submitted April 7, 1932. (Docket No. 50, Calendar No. 36,118.) Decided June 6, 1932.

Case by Philip A. Holman, receiver of First National Bank of Allegan against Myron B. Moore and another for damages sustained by conspiracy to defraud the bank. Verdict and judgment for plaintiff. Defendant Moore appeals. Affirmed.

*Leo W. Hoffman* and *Clare E. Hoffman*, for plaintiff.

*Knappen, Uhl, Bryant & Snow* (*Harry Pell*, of counsel), for defendant Moore.

SHARPE, J. The plaintiff was appointed receiver of the First National Bank of Allegan in May, 1930. The defendant Barker was a stockholder and the cashier of that bank in the years 1924 and 1925. The defendant Moore during those years was engaged in "law business, real estate and investments" in that city.

It is the claim of the plaintiff, as set forth in his declaration, that the defendants conspired together to cheat and defraud the bank by the purchase for it of certain mortgages which were inadequate securities for the money paid for them by the bank, and in the purchase of which both of the defendants received certain commissions. The plaintiff had verdict and judgment in the sum of $1,718.36, from which the defendant Moore has taken an appeal.

There is some dispute in the testimony, but in our opinion the jury were justified in finding that Carl Rambadt was the owner of 90 acres of land in Allegan county, subject to a mortgage thereon. He sold it in 1924 to Charles and Emma Slesdet, taking a second mortgage thereon for $2,400 as a part of the purchase price. He approached Moore with a view of disposing of this mortgage. Moore spoke to Barker about it, and they together went and looked over the farm, and the purchase was made for $1,800. The mortgage was assigned to Barker, who gave Rambadt a cashier's check on the bank therefor. In consummation of the deal, Barker gave Slesdet a cashier's check for $220, caused to be credited to Moore's account in the bank by deposit slip $220, and to his own account the sum of $220. The extra $60 seems to have been accrued interest. The mortgage and note were entered on the bank's books as its property, and the jury might well have found that Moore knew that Barker was acting for the bank in the transaction.

In March, 1925, Rosa Ridgley owned an 80-acre farm, which she offered to sell for $2,000. Lee and Nellie Moore (not related to the defendant) were willing to purchase it, but were without funds. They conferred with the defendant Moore, who took the matter up with Barker. It was finally arranged that Mrs. Ridgley should deed to the Moores and they give a note and mortgage thereon to the bank for $2,700, and this was done. A certificate of deposit for $2,000, which she afterwards cashed, was issued to Mrs. Ridgley, and, by deposit slips, $350 was credited to the accounts of Barker and Moore.

The bank of which plaintiff is receiver was a national bank, organized under the provisions of the Federal statutes relating thereto.

"Any national banking association * * * may make loans secured by improved and unincumbered farm land * * * nor shall the amount of any such loan * * * exceed 50 per centum of the actual value of the property offered as security." 12 USCA, § 371.

"Any officer, director, agent, or employee of any Federal reserve bank, or of any member bank * * * who * * * wilfully misapplies any of the moneys, funds, or credits of such Federal reserve bank or member bank, * * * and every person who, with like intent, aids or abets any officer, director, agent, employee .* * * in any violation of this section shall be deemed guilty of a misdemeanor." 12 USCA, § 592.

"Except as herein provided, any officer, director, employee, or attorney of a member bank who stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value from any person * *. * for procuring or endeavoring to procure for such person, * * * or for any

other person * * * any loan from or the purchase or discount of any paper, note, * * * shall be deemed guilty of a misdemeanor." 12 USCA, § 595.

It is elementary that an officer of a corporation may not make a private profit for himself in the discharge of his official duties. The liability of Barker to account for the sums thus unlawfully withdrawn by him from the funds of the bank is clearly established. *Sparrow* v. *E. Bement & Sons,* 142 Mich. 441 (10 L. R. A. [N. S.] 725); *German Corporation* v. *Negaunee German Aid Society,* 172 Mich. 650; *Garber* v. *Town,* 208 Mich. 1; 14A C. J. p. 122; 7 R. C. L. p. 458. But counsel for Moore insist that no such relation of trust existed between him and the bank as rendered him liable to it for the moneys thus withdrawn, and that he had a right to make a personal profit in the sale of the securities to the bank.

Barker's action was certainly a wilful misapplication of the funds of the bank to the extent to which the value of the securities was reduced, and Moore's participation therein, by acceptance of the sums deposited to his credit in accordance with their agreement therefor, must be treated as aiding and abetting him with a like intent, within the meaning of the statute above quoted. The statute is but expressive of the general rule of law which should be applied to the facts presented. In *Old Mortgage & Finance Co.* v. *Pasadena Land Co.,* 241 Mich. 426, 434, 435, this court quoted with approval the following from the opinion of the trial court:

"If a third person join with a corporate officer in dealing with the corporation, with knowledge that he is such officer, the contract may be set aside as to him as well as the corporate officer. This is upon the theory that where a stranger participates with

the officer of a corporation in the commission of an act of manifest bad faith or breach of duty to it, he, equally with the officer, commits a wrong, and ought not to derive profit from it.''

In *North American Coal & Coke Co.* v. *O'Neal,* 82 W. Va. 186, 192 (95 S. E. 822, 825), it was said:

''There is nothing disclosed in the facts of this case to take it out of the general rule that promoters or directors of a corporation, or those colluding with them, who, in breach of their trust and in fraud of the corporation, take to themselves secret profits, are liable to account for the same to the corporation.''

Counsel for the appellant requested the court to charge that, in case they found for the plaintiff, the measure of his damages ''is the difference in value at the time, and the amount paid by the bank.'' Counsel for plaintiff urge that they were prevented from submitting proof of actual loss to the bank by the objection of defendant's counsel, sustained by the court. Irrespective of the effect of such action, we find no error in the instruction given that the measure of plaintiff's damages was the loss it sustained by the wrongful act of Barker in using the money of the bank in the way he did, if Moore at that time knew that it was being used for that purpose.

It is urged that the claim under the Rambadt mortgage was barred by the statute of limitations (3 Comp. Laws 1929, § 13976). This statute limits the time within which personal actions such as this may be brought to six years after the cause of action shall accrue. The money of the bank was used in the purchase of this mortgage on October 21, 1924. This action was not begun until March 10, 1931, more than six years thereafter.

Section 13983 reads as follows:

"If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

While a careful audit of the books of the bank would doubtless have disclosed the facts on which plaintiff now relies for recovery, the evidence submitted shows that it was not discovered by the officers of the bank before the receiver was appointed. It was, we think, the purpose of Barker to have the entries on the books made in a way to conceal from its other officers and directors the nature of the transaction, and such act on his part was a fraudulent concealment thereof, for which, under the circumstances, Moore is chargeable as well as himself.

Counsel for the plaintiff urge that, on the undisputed proof, the verdict should have been for $1,798.45 instead of $1,718.36, as rendered. As no appeal was taken in his behalf, the amount thereof may not be changed in this court.

The judgment is affirmed.

McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred. CLARK, C. J., did not sit.