INGWALD RISVOLD, ON BEHALF OF CLEARY HILL MINES COMPANY, v. D. R. GUSTAFSON AND OTHERS.[1]

April 19, 1940.

No. 32,211.

[1]Reported in 292 N. W. 103.

*G. F. Mantz* and *Arthur C. Wangaard,* for appellant.

*Earl J. Maxwell* and *Jean J. McVeety,* for respondents D. R. Gustafson, E. L. Brandell, J. A. Gustafson, and G. H. Gustafson.

*J. A. Mansfield* and *Godley & Olson,* for respondents Ben Dahl, H. H. Thurston, Charles W. Drew, and R. E. Wyer.

*Stinchfield, Mackall, Crounse & Moore,* for respondent Cleary Hill Mines Company.

LORING, JUSTICE.

This is an appeal from an order denying the plaintiff's motion for amended findings or a new trial. We review the order insofar as it denies the motion for a new trial. The plaintiff, as a stockholder in the corporate defendant, sought in behalf of the corporation to recover from the individual defendants all of the capital stock of the Dahl Corporation, hereinafter referred to, or in lieu thereof its value, and for himself he sought the expense of prosecution of the suit, including attorneys' fees.

The complaint charged the individual defendants with a conspiracy to defraud the corporate defendant of a one-third interest in a thousand acres of placer ground on Sullivan Creek in the Hot Springs precinct in the vicinity of Fairbanks, Alaska. The defendants D. R. Gustafson, J. A. Gustafson, Brandell, Drew, and Wyer were directors of the corporate defendant.

The defendant Dahl was an experienced placer miner who had spent his life in the Alaskan gold fields. It is apparent that he had little business experience outside of mining. In 1933 he acquired an option from the owners on the acreage here involved. He was on friendly terms with the Gustafsons and sought their aid in endeavoring to dispose of the option at a profit in Seattle, Chicago, Minneapolis, and other places in the United States. Apparently at that time there was no thought of disposing of the property or any interest in it to the defendant corporation. Dahl was attempting to get $100,000 or $125,000 for the property, and apparently the parties hereto did not think at that time that the defendant corporation was in a position to acquire the property at so high a price. Having been unable to dispose of the entire property at a profit, it evidently occurred to D. R. and J. A. Gustafson and to Brandell that the defendant corporation might sell more of its capital stock and acquire a two-thirds interest in the property for $75,000, all of which would have to be paid to the owner to take up the option. Dahl had, to begin with, promised D. R. and J. A. Gustafson, Thurston, and Brandell a share of the profits which he might make in the disposition of the option.

When the sale of a two-thirds interest to defendant corporation was broached he agreed with them that they should have an interest with him in the remaining one-third of the property when the option was taken up and the two-thirds conveyed to the defendant corporation. This interest of the Gustafsons and Brandell was not disclosed to the other officers and directors or stockholders of the defendant corporation, and on April 23, 1934, a contract was entered into between the owners of the property as vendors and the defendant corporation as vendee whereby it was agreed that for a consideration of $75,000 payable in four instalments the vendors were to convey to the defendant corporation a two-thirds interest in the property and to the defendant Dahl a one-third interest, deeds to be executed and placed in escrow with the First National Bank at Fairbanks with instructions to deliver them to the respective grantees upon the payment of the purchase price in full by the corporate defendant. The contract granted to the corporate defendant, and not to Dahl, the right to enter upon the mining property and to conduct mining operations thereon. Later it was agreed between the corporate defendant and Dahl that the corporation was to be reimbursed for the moneys expended for the development of the property before the division of profits according to the respective interests. The defendant Thurston was a stockholder in the corporate defendant but not an officer or director. He was a friend of Dahl and was given an equal share with Dahl and the others in Dahl's one-third. Later the defendants Drew and Wyer were given an interest in Dahl's one-third. Probably this was done when they discovered that the Gustafsons and Brandell had been promised an interest. Defendant G. H. Gustafson was also promised an interest. Thereupon a corporation known as the Dahl Corporation was organized under the laws of Alaska with a capital stock of 400 nonpar shares, 50 of which were issued to each of the eight individuals who had an interest in Dahl's one-third which was transferred to the Dahl Corporation. Dahl was given employment as superintendent or manager of the mining operations by the corporate defendant,

which spent around $72,000 in development work. The operations in the ensuing years proved to be very profitable.

In February, 1938, plaintiff brought this action and included as defendants Thurston and G. H. Gustafson, who, though stockholders of the defendant corporation, were not officers or directors thereof but who had received stock in the Dahl Corporation. Prior to the commencement of the action Drew and Wyer offered to transfer their Dahl Corporation stock to the defendant corporation and subsequently did so.

Soon after the commencement of this action the stockholders of defendant corporation held a meeting and elected a new board of directors which engaged attorneys to represent it herein. An answer was filed in behalf of the corporation which demanded all the relief sought by the plaintiff. Counsel for the corporation took an active part in the trial, which resulted in findings in favor of the plaintiff and the corporation to the extent that directors Brandell, J. A. Gustafson, and D. R. Gustafson concealed their arrangement with Dahl from other representatives of the corporation until after the consummation of the transaction. The trial court ordered those defendants to transfer their Dahl Corporation stock to the defendant corporation, or if the rights of third parties should have intervened they were to pay to the defendant corporation the value of the stock, which the court found to be $100 per share. As to the defendant G. H. Gustafson, who was not a director at the time of the transaction and who had received his interest partly from the directors and partly from Dahl, it required that he turn over to the corporation 30 shares or their value, 30 shares having been the portion of his stock representing the interest which the court considered that he had acquired from Brandell and the two other Gustafsons. No relief was granted against Drew and Wyer, who had turned over their stock to the defendant corporation prior to the trial. They were given their costs and disbursements, as were Thurston and Dahl, who had no trust relation to the corporation.

The plaintiff was dissatisfied with this result and moved for amended findings on the theory of a conspiracy amongst all the

individual defendants to defraud the defendant corporation. The trial court declined to amend its findings and denied the motion for a new trial. Plaintiff now comes here assigning 38 errors but has briefed only the points that the evidence compelled a finding of a conspiracy to defraud to which all of the individual defendants were parties and that because Dahl and Thurston were benefited by reason of the corporate defendant's having taken the two-thirds interest in the property upon the basis hereinbefore recited they should be compelled to turn over all their stock in the Dahl Corporation to the defendant corporation. He also contends that Wyer and Drew assigned their shares to the defendant corporation as a result of the commencement of this action and that consequently the recovery of those shares should be taken into consideration in connection with the awarding of expenses and especially of attorneys' fees. He makes the contention further that the evidence compels a finding that the value of the Dahl Corporation stock is $150 a share instead of $100, and he claims to be entitled to a further judgment against the individual defendants for such sum as is allowed the appellant for attorneys' fees.

1. The defendant corporation was satisfied with the result in the trial court and has taken no appeal. Neither has any individual defendant taken an appeal. This leaves as the principal problem the question whether or not Dahl and Thurston may be compelled to transfer to the corporate defendant their stock in the Dahl Corporation. The contract by which the defendant corporation acquired the two-thirds interest in the property upon which Dahl had the option turned out to be a very profitable one for the corporation, and it does not seek a rescission of that contract. What the corporation sought in the trial court was a recovery of the secret profits made by its directors in a deal to which the corporation was a party. That relief has been awarded. Is the corporation entitled to have, in addition to these secret profits, the interest which Dahl had in the property and which was apparent on the face of the contract which the corporation made and which it does not now seek to rescind? Plaintiff cites a number of

cases where rescission has been granted to the victims of collusion by third parties with agents or corporate directors. He has also cited cases where secret profits have been recovered from those who have colluded with agents to get from the principal a larger price than that at which the property they were commissioned to buy was actually purchased. But counsel has cited no case where relief has been granted beyond the principles in those cases announced.

The plaintiff relies heavily upon Old Mortgage & Finance Co. v. Pasadena Land Co. 241 Mich. 426, 216 N. W. 922; Holman v. Moore, 259 Mich. 63, 242 N. W. 839; City of Boston v. Simmons, 150 Mass. 461, 23 N. E. 210, 6 L. R. A. 629, 15 A. S. R. 230; United Zinc Companies v. Harwood, 216 Mass. 474, 103 N. E. 1037, Ann. Cas. 1915B, 948; Whitford v. Moehlenpah, 196 Wis. 10, 219 N. W. 361; and Seeley v. Cornell (5 Cir.) 74 F. (2d) 353. Plaintiff also cites Restatement, Restitution, § 138(2), to the effect that:

"A third person who has colluded with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom, is under a duty of restitution to the beneficiary."

All of these expressions either in the Restatement or in decided cases must be considered and interpreted in the light of the facts under consideration, and no doubt secret profits by directors or agents render the contract subject to rescission by the principal, or the directors or agents or those who have colluded with them liable to surrender secret profits; but here the corporation has recovered in the court below all the secret profits there were in this transaction. Dahl's profit in the deal was well known. It stood upon the contract in full view of all who cared to read. So far as the corporate defendant was concerned, it was in no different situation than it would have been had Dahl been the outright owner of the property. Had he been such and had the property been subject to a $75,000 mortgage which the corporate defendant paid up in consideration of a two-thirds interest in the property, it could not have become entitled to the whole of the remaining

one-third because some of its directors colluded with Dahl and made a secret profit out of the transaction. It has acquired their secret profits in which Dahl did not share, and therefore it is entitled to no further relief against him or against Thurston, who had no fiduciary relation with the corporation and who acquired his interest by gift from Dahl, nor as to G. H. Gustafson insofar as the 20 shares are concerned which represent what came to him from Dahl and Thurston. Dahl had no secret benefits arising out of this contract and did not participate in the secret profits made by the directors. The principles of agency did not apply to him. The profit he made was the fruit of his ownership of the option, not of any agency. New York Trust Co. v. American Realty Co. 244 N. Y. 209, 155 N. E. 102, is enlightening though it does not involve a third party. In fact no case has been called to our attention where recovery has been sought against a third party under circumstances like these.

2. We think the record sustains the trial court's findings that Drew and Wyer offered to assign their stock to the corporate defendant prior to the commencement of this action and hence that insofar as relief against them was concerned the action was wholly unnecessary.

3. The evidence of several witnesses sustains the trial court's finding as to the value of the Dahl Corporation stock. The value of such mining stock is always and must, in the nature of things, be largely a matter of guess. Veins peter out and placer grounds become barren. There are disappointments even when ore has been blocked out and gravel has been tested for value.

4. The trial court concluded that the plaintiff should be allowed a reasonable fee for his counsel to be fixed by that court upon application therefor. There has been no appeal by the defendants from that conclusion. It is a conclusion in favor of the plaintiff so the plaintiff is not aggrieved thereby. Doubtless in fixing such attorneys' fees the trial court will take into consideration the fact that the corporation appeared in the action by competent

counsel and took an active part therein, recovering in the trial court all that it was entitled to recover.

The order appealed from is affirmed.

