NIENABER, APPELLANT, v. KATZ ET AL., APPELLEES.

(No. 6050—Decided February 24, 1942.)

*Messrs. Heilker & Heilker, Mr. Edmund D. Doyle* and *Mr. Edwin T. Heilker,* for appellant.

*Messrs. Taft, Stettinius & Hollister* and *Messrs. Landis, Ferguson, Bieser & Greer,* for appellees.

By the Court. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court for the defendants, entered on their demurrer to the plaintiff's second amended petition. It is now before this court on that demurrer.

The plaintiff, as a stockholder, is seeking to enforce for and on behalf of The Gruen Watch Company a cause of action which he alleges it has against the other defendants. It is a "stockholder's action" asserting a derivative right. The demurrer challenges the legal sufficiency of the allegations of the second amended petition in several respects.

(1) It is urged that no cause of action is alleged. Epitomized, the second amended petition sets forth that The Gruen Watch Company was indebted to eight banks in the aggregate sum of $1,818,750 on notes, and on March 31, 1935, an agreement was entered into between the company and the banks whereby the banks cancelled and surrendered their notes in consideration of corporate debentures of the par value of $727,500, 7,275 shares of "class A Preferred Stock" of the par value of $100 per share, and 363, 750 shares of "class B Convertible Non-Voting Preferred Stock" of the par value of $1 per share. The binding effect of this agreement was predicated upon the stockholders approving before August 1, 1935, a certain plan of re-organization adopted by the board of directors at the same time the agreement was entered into, a copy of which was attached to the agreement. In general, the re-organization was to make available the debentures and stock so that the company could

perform its contract, and also to reduce the outstanding stock of the company.

At the same time, and conditional upon the approval of the re-organization by the stockholders, the banks and the company entered into another contract, whereby the banks agreed to place 121,250 shares of "class B Convertible Non-Voting" stock in escrow. By the terms of the escrow agreement, the company and its stockholders were given the right to purchase this stock at $3 per share. There is no allegation that either the company or the stockholders were bound to buy any of this stock. The proceeds of any exercise of the option were to be remitted to the banks.

It is alleged that if the company performed its obligation to pay the debentures, and, if the prosperity of the company was such that the "class A Preferred Stock" would be worth its par value, and, if the company or its stockholders exercised the option to buy the "class B" stock placed in escrow, the banks would receive cash and "class A" stock of the par value of the original debt on the notes, and in addition would have 242,500 shares of "class B" stock. However, as the stockholders had full knowledge of both these agreements, it is not alleged that there was any vice in this potential profit to the banks. But, it is alleged that at the same time a third agreement was entered into between the banks and the defendants, Benjamin S. Katz, Fred G. Gruen and George J. Gruen, who at the time were officers and directors of the company, whereby Katz and the Gruens "agreed to use their best efforts as active officials of The Gruen Watch Company, to make the operation of said company successful, to carry out faithfully the work assigned to them by the board of directors of said company, and to effect at the earliest possible time the payment of said debentures and the retirement of said class A Preferred Stock" and in consideration therefor the

banks agreed that they would from time to time transfer to them or their nominees portions of said stock, the amount and time of transfer depending largely upon the payment of the debentures and the retirement of the "class A Preferred" stock. If all the debentures were paid and "class A Preferred" stock retired within a certain time, Katz and the Gruens would have received an aggregate of 242,500 shares of the "class B Convertible Non-Voting Preferred" stock.

So that if these things, that were purely hypothetical at the time should become realities, the company would be relieved of a debt of $1,818,750, the banks would be paid in full, the company or its stockholders would have 121,250 shares of "class B" stock, in addition to the original holdings, and Katz and the Gruens would have the 242,500 shares of "class B" stock.

Now it is alleged that this plan has been executed in accordance to its terms at least to the place where Katz, the Gruens, or their nominees have received some or all of the 242,500 shares. While the allegations of the second amended petition are somewhat indefinite on the point, in view of the fact that this amended petition was not filed for more than six years after these contracts were executed, it is a fair construction that these contracts have been fully performed by all parties and that Katz and the Gruens or their nominees have received all of the 242,500 shares of "class B" stock. But, it is now asserted that they cannot hold this stock as against the claim of the company and its stockholders, because at the time the contract was entered into they were officers and directors and the contract relating thereto and its terms "were kept secret and concealed from this plaintiff and all other stockholders of The Gruen Watch Company except the individual defendants herein and cer-

tain other officers and directors acting in collusion with said defendants'' and the plaintiff had no knowledge of it until within one year of filing this action.

There is no allegation that Katz and the Gruens, or either of them were already bound to The Gruen Watch Company or any one else to continue as its officers and perform the service required of them by the assailed contract. Nor is it claimed that the consideration recited in the contract was merely colorable and a cloak under which Katz and the Gruens received a consideration that would have accrued in some way to the corporation or its stockholders. And, further, there is no claim that this contract was made to or did influence Katz or the Gruens in their attitude toward the plan of re-organization or the contract between the banks and the corporation.

It is asserted by the plaintiff and denied by the defendant that this brings the case within the category of cases of an officer of a corporation making a secret profit at the expense of the corporation for which he must account to the corporation.

In the petition there was no allegation of secrecy and there is in the files an affidavit filed by defendants tending to prove that notice was given to the stockholders that it was the purpose of the banks to distribute this stock in such a way as to make it to the interest of the officers to exert themselves to accomplish the payment of the debentures and the retirement of the "class A" stock owned by the banks. It is urged that we should look to these in determining the sufficiency of the amended petition. We are not so authorized. The filing of an amended petition is an abandonment of the earlier pleading. "The earlier pleading becomes *functus officio*." *State, ex rel. Talaba,* v. *Moreland, Judge,* 132 Ohio St., 71, at 75, 5 N. E. (2d), 159. And, of course, for obvious and stronger reasons, the affidavit filed by demurrant could

not control or affect the meaning of the language in the adversary pleading.

In passing upon the demurrer to this amended petition, the defendants have admitted for this purpose that the assailed contract was kept secret by them in the sense that its existence and terms were not communicated by them to the plaintiff and that he did not otherwise acquire knowledge thereof.

That the relation between the officers and directors and their corporation and its stockholders is one of trust as to all corporate matters is universally recognized. It is a fiduciary relation and the officers and directors are frequently called trustees. 10 Ohio Jurisprudence, 681 *et seq.,* Section 505. Of course, they are not trustees in the sense of being the holder of the legal title to property for the use and benefit of another. The description, however, if understood, is sufficiently accurate for practical purposes.

Now what is the principle underlying the rule requiring officers to account for profits? Is it the mere fact of secrecy regardless of the nature of the fact concealed? Or rather, is it dependent on the fact concealed? Clearly, the latter. The failure of officers to disclose an entirely irrelevant fact, or, even its active concealment would not impose a liability to the corporation or its stockholders. The officer owes a certain duty to the corporation and it is his failure to perform that duty to his own enrichment that creates the liability. The secrecy is simply the cloak under which he has hidden his failure of duty and the personal profit he has thereby made. In 10 Ohio Jurisprudence, 704, Section 519, it is said:

"Any secret profit obtained by an officer or director *by reason of violation or disregard by him of obligations arising by reason of fiduciary relations* existing between him and the corporation, cannot be retained,

but must be accounted for to the corporation." (Italics ours.)

See, also, 19 Corpus Juris Secundum, 161, Section 786.

Of course, if an officer or any other agent takes an equivocal position and attempts to serve himself or a third person, his disclosure of the fact and the agreement or acquiescence of his principal thereto may avoid what would otherwise be a violation of duty and thereby prevent liability from attaching, but in the absence of disclosure, the liability would attach because of the violation of the duty of undivided loyalty, and not because of non-disclosure. That principle is illustrated by the case of *Wendt* v. *Fischer*, 243 N. Y., 439, 154 N. E., 303, cited by the plaintiff.

That this is so is clearly shown by the case of *Aetna Ins. Co.* v. *Church*, 21 Ohio St., 492. There was no disclosure there, and still the agent was not required to account because there was no breach of duty. The defendants in *Bristol* v. *Scranton*, 63 F., 218, were not required to account for the same reason.

The presence of a breach of duty is implicit in all the cases relied on by the plaintiff. The case of *Risvold* v. *Gustafson*, 207 Minn., 359, 292 N. W., 103, is simply one in which directors were required to account for what in effect was a bribe given to them to influence their action as directors and stockholders. This is also true of *Western States Life Ins. Co.* v. *Lockwood, Exr.*, 173 Cal., 734, 161 P., 498. Counsel cite a statement from *Green* v. *O'Connor*, 93 F. (2d), 309, at 312 and 313, that a fiduciary may not compete with his beneficiary, but it is inapplicable here, because there is no charge that these defendants competed in any way with The Gruen Watch Company. The authority cited (1 Restatement of Trusts, 431, Section 170, comment *a*) in support of the universally

accepted rule specifically limits its application to "matters within the scope of the relation."

Counsel rely on the two Ohio cases of *Beck* v. *Fishel,* 16 C. C. (N. S.), 130, 26 C. D., 616, and *Bohannon* v. *Taylor,* 52 Ohio App., 564, 4 N. E. (2d), 164. In the former case, the court made a very careful analysis of the evidence to demonstrate that the larger part of the sum paid to the defendant was a part of the consideration paid for the assets of the corporation of which he was president. It was impossible to separate from this the consideration which he could have rightfully demanded for his personal agreement not to compete. Under such circumstances, it was in accordance with equity and fair dealing that he should account. In the latter case (*Bohannon* v. *Taylor, supra*) the corporation was engaged in a campaign of purchasing and retiring its capital stock. Its president and general manager assumed to use the corporate funds to buy the stock in his own name and for his own profit. All the court held was that the corporation was entitled to the benefit of his contract. He was not only competing with his corporation, but using the corporate funds to do it.

There is no allegation that the banks would have surrendered their notes in exchange for the debentures, the "class A" stock and 121,250 shares of "class B" stock; or that Katz and the Gruens did not obtain the best possible contract on behalf of the corporation; or that the banks would have surrendered their notes for the debentures, the "class A" stock, the "class B" stock, and any conceivable substitute for the agreement of Katz and the Gruens to stay with the corporation and contribute their knowledge and ability to the rehabilitation of its affairs; or that the inducement to do so contained in this contract was an unconscionable over-payment to the detriment of their corporation.

That the subject-matter of this assailed contract had nothing to do with the assets of The Gruen Watch Company is easily demonstrable. Suppose a meeting of the stockholders had been called and the demand made that the corporation bind itself by contract that Katz and the Gruens should continue in its employ until the debentures and stock had been liquidated, and the corporation had so agreed. Would that have been binding upon Katz and the Gruens? Or, suppose that this subject had been presented to the stockholders' meeting that approved the plan of reorganization of the corporation and the contract between the banks and the corporation. Would it not clearly have been irrelevant? The corporation and its stockholders did not own in any way the time and services of Katz and the Gruens. The banks bargained with Katz and the Gruens for their services, because they had the power to give or withhold. Neither the corporation nor its stockholders had that power.

As long as Katz and the Gruens continued to act as officers and directors of The Gruen Watch Company, it was entitled to their individual loyalty, and if they had contracted to give any part of that duty to the banks to the detriment of the corporation, a liability would exist, but there is no such claim.

It is the secrecy alone that is asserted as the basis of liability and that fact, it seems, distinguishes this case from all the cases relied on by the plaintiff.

Searching the second amended petition for other basis of liability, we find nothing save the allegation that the other directors and some of the stockholders knew about this contract and were in "collusion" with the defendants in relation to it. At most, that states a mere conclusion that there was a secret cooperation with perhaps a fraudulent connotation. It fails as an allegation of facts constituting a breach of duty.

It should be mentioned that the fact of profit to the officers or loss to the corporation, both or either, are unimportant in the absence of a breach of duty.

(2) Another contention is that the allegations of facts to excuse failure to make demand upon the directors to institute this action are insufficient. There is no doubt that ordinarily demand upon the board of directors is a condition precedent to the right of a stockholder to sue on behalf of the corporation, but this rule is not without exception. If it appears that the demand would be vain, or that if complied with the situation clearly shows that the suit would not be prosecuted in the interest of the corporation, the stockholder may proceed without making demand.

If any wrong is alleged in this second amended petition it is on the part of three directors and their attorney, who is also a director, and together they constitute a majority of the board. They are contesting this action not alone on the ground that the plaintiff has no right to sue, but also on the ground that the corporation has no cause of action. Under such circumstances, a demand would appear to be a futile thing. That seems to be the result of the cases. 18 Corpus Juris Secundum, 1283 *et seq.,* Section 564, 10 Ohio Jurisprudence, 364 *et seq.,* Section 254.

(3) Finally, it is urged that the second amended petition is demurrable, because of a defect of parties.

An analysis of the allegations discloses that the foundation of the cause of action, if any, is the wrongful conduct of the defendants. Whatever liability there might be would be joint and several. The plaintiff, therefore, had a right to sue any one or all of the wrongdoers. The fact that others might have been joined is not a defect.

For these reasons, the demurrer is sustained on the

ground that the second amended petition fails to state a cause of action.

*Demurrer sustained.*

MATTHEWS, P. J., and ROSS, J., concur.

HAMILTON, J., dissenting. I do not agree with my colleagues in sustaining the demurrer to the second amended petition on the ground that the second amended petition does not state a cause of action.

The Legislature denounced technicalities in pleading by enacting Section 11305, General Code, which provides, in substance, that causes of action shall be stated in ordinary and concise language. The second amended petition in question, among many specific allegations for a cause of action, alleges plaintiff to be a stockholder of the company affected by the misconduct of the defendants as officers and directors, and brings the action on his behalf and on behalf of the other stockholders.

The law is settled that the utmost good faith is required of officers and directors toward the corporation which they are chosen to serve.

The complaint is that the defendants made a secret profit in the refinancing of The Gruen Watch Company. That the stockholders authorized the issuance of stock and the use thereof to secure certain creditors, among them several banks, and arranged with one of the banks to turn over to it a block of 363,750 shares of stock, par value $1 per share, to secure such banks in the refinancing; the defendant officers, without the consent of the stockholders, entered into an agreement by which one-third of the stock should be placed in the hands of an escrow trustee; that such one-third should be taken up by the company at the price of $3 per share, or three for one; that upon the full payment of the value of the one-third escrow stock, which

would be the equivalent of the full value of the 363,750 shares, the bank should retain the one-third as its own property.

It is further alleged that all of these transactions were provided in a contract between the defendants and the creditor bank, which contract further provided that upon the final payment and delivery of the stock to the bank, that in consideration of the defendants as officers and directors of The Gruen Watch Company giving their very best services to the company, the bank would assign and turn over two-thirds of the stock to defendants, all of which was done, all without the knowledge or consent of the stockholders, thereby enriching the defendants personally in the amount of the value of such shares, all in violation of their duties and trust as officers and trustees.

An accounting is prayed for.

I have only set forth a part of the allegations, all of which by the demurrer are admitted to be true.

How can it be said that a cause of action is not pleaded? It may be that plaintiff cannot prove the allegations, but that is not the question here. The question here is: Has plaintiff a right to his day in court to attempt to prove the allegations of the amended petition and receive equitable relief?

It may be stated here that the trial court sustained the demurrer on the ground of defect of parties. The majority opinion finds that the demurrer was not sustainable on that ground, which was the ground stressed by counsel at the trial in this court orally and in their brief, and little was urged as to the insufficiency of the cause of action.

The majority opinion further ignores the provisions of Section 11345, General Code, which provides in part that pleadings shall be liberally construed, with a view to substantial justice between the parties.

The decision in this case ignores the civil code of Ohio and tends to defeat rather than promote justice.