**OHIO DRILL & TOOL COMPANY et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**Fred H. JOHNSON et al., Defendants-Appellants, Cross-Appellees.**

Nos. 77–3456, 77–3457.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1979.

Decided June 25, 1980.

Rehearing and Rehearing En Banc Denied Sept. 17, 1980.

Charles E. Brown, Crabbe, Brown, Jones, Potts & Schmidt, Ira O. Kane, Columbus, Ohio, Jeffrey E. Zink, Canton, Ohio, for Fred H. Johnson.

Lyman Brownfield, Brownfield, Kosydar, Bowen, Bally & Sturtz, Terry L. Goodman, Columbus, Ohio, for Ohio Drill & Tool Co.

Before EDWARDS, Chief Judge, CELE-BREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This case is before the court on appeal from a judgment entered by the district court after remand finding defendants-appellants Johnson, Woodward, and Zink liable for breach of their fiduciary duty as officers and directors of Fidelity National Life Insurance Company. Plaintiffs-appellees cross-appeal from the district court's determination that defendants did not violate § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78(j), and Rule 10b–5 promulgated thereunder, from the district court's ruling that defendants are not jointly and severally liable for their breach of fiduciary duty, and from the district court's determination that defendant Zink did not breach his fiduciary duty in the AMVETS transaction. For the reasons stated below, we affirm in part and modify in part.

## I. FORTUNE TRANSACTION

During 1965 and 1966, the Fidelity National Life Insurance Company (Fidelity)[1] sought to expand company insurance operations into Pennsylvania. For this purpose, the Fortune National Life Insurance Corporation was organized in Pennsylvania since Fidelity could not legally qualify for a license to do business in Pennsylvania. The defendants, Johnson, Woodward and Zink, each an officer and director of Fidelity, were principal protagonists in the promotion and organization of Fortune. To enable defendants, together with other directors and investors, to invest in Fortune Stock, the defendants caused the formation

---

1. Fidelity is the plaintiff corporation on whose behalf this shareholder's derivative suit is brought.

of Central Investment Company (CIC).[2] Fidelity did not invest directly in Fortune, but the Board of Directors apparently authorized an investment of $40,000 by Fidelity in CIC.[3]

In the organization of Fortune, 300,000 founders' shares were authorized to be sold at $1.50 per share. Eighty-eight thousand seven hundred (88,700) of these shares were purchased by CIC, of which 21,485 shares were to be distributed to Fidelity.[4] In 1966, the stockholders of CIC voted to dissolve the corporation. In the distribution of Fortune shares of stock, the plaintiff alleged that there was a disparity of treatment between Fidelity and the individual investors. Plaintiffs insist they would have received 1,086 more Fortune shares, if the distribution to it had been on the same proportional basis per cash investment as the distribution to the individual investors.

During Fortune's organizational stages, expenses for incorporation, attorney's fees, lease of office space, and travel were paid by Fidelity and later reimbursed by Fortune without interest. The defendants also made use of Fidelity's executive time and overhead for which Fortune made no reimbursement.

With respect to the Fortune transaction, plaintiffs seek disgorgement of defendants' profits predicated on liability under § 10(b)/Rule 10b–5 of the Securities & Exchange Act and defendants' breach of their fiduciary duty.

Initially, the district court held that the measure of damages in a stockholder's derivative suit is limited to out-of-pocket losses suffered by the corporation. The district court found Fidelity actually profited from the Fortune venture and thus concluded there was no liability on behalf of the defendants. *Ohio Drill & Tool Co. v. Johnson,*

361 F.Supp. 255 (S.D.Ohio 1973). On appeal, this court reversed the judgment of the district court holding that disgorgement of profits was the appropriate measure of damages in a § 10(b)/Rule 10b–5 case. *Ohio Drill & Tool Co. v. Johnson,* 498 F.2d 186 (6th Cir. 1974). We remanded the case for a determination of whether a § 10(b)/Rule 10b–5 violation had occurred with instructions to apply the appropriate measure of damages. Regarding the fiduciary duty allegations, the district court failed to make any specific findings. The district court was also instructed to make further findings on that issue.

On remand, the district court amended its prior findings of fact and found that defendants profited from the Fortune transaction.[5] The court further found that services were rendered by Fidelity employees to Fortune for which no reimbursement was received. The district court concluded, however, that defendants were not liable under § 10(b)/Rule 10b–5 on the basis that their activities did not evidence scienter—a knowing intent to deceive, manipulate, or defraud—a necessary element of § 10b/Rule 10b–5 liability. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir. 1979); *Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 593 F.2d 736 (6th Cir. 1979). Notwithstanding the absence of scienter, the district court found defendants breached their fiduciary duty when they profited at the unconsented expense of Fidelity in the Fortune venture. The court imposed a constructive trust on each defendant to the extent they each profited from the venture.

Subsequent to entry of judgment below, plaintiffs filed a motion with the district

---

**2.** CIC was organized on advice from Fidelity's counsel, defendant Zink, that Ohio law prohibited Fidelity from investing directly in Fortune's stock.

**3.** This amount was later reduced to $34,000. This reduction was an attempt to bring the amount of Fidelity's investments within the maximum limits prescribed by Ohio law.

**4.** In addition to organizing Fortune, the defendants also participated in the investment. For a detailed description of the defendants' involvement, *see Ohio Drill & Tool Co. v. Johnson,* 361 F.Supp. 255 (S.D.Ohio 1973).

**5.** The district court's remand opinion was not reported and can be found at Vol. II, J.App. 3.

court pursuant to Fed.R.Civ.P. 59 and 60 requesting the court to amend its judgment and, *inter alia*, hold the defendants jointly and severally liable for their breach of fiduciary duty. The district court overruled plaintiffs' motion finding no justification for a finding of joint liability.[6] These cross-appeals followed.

### A. § 10(b)/Rule 10b–5 Claims

We agree with the district court that the principles enunciated in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), are directly applicable to the instant § 10(b)/Rule 10b–5 allegations and affirm its conclusions that the evidence of record does not support a finding that defendants acted with actual intent or fraudulent motive in the Fortune transaction.

While the case *sub judice* was pending appeal, this court specifically decided an issue left open by the Supreme Court in *Ernst & Ernst*, 425 U.S. at 193–94 n. 12, 96 S.Ct. at 1380–81 n. 12, 47 L.Ed.2d 668. In *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1023 (6th Cir. 1979), we held that *recklessness* is a sufficiently culpable state of mind for liability under § 10(b)/Rule 10b–5. We stated in *Mansbach* that we agreed with the seventh circuit definition of recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known it." *Id.* at 1025 (footnote omitted, but commended to the reader). *See Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977).

As noted above, the district court lacked the benefit of our decision in *Mansbach* when it rendered its judgment. Consequently, the district court failed to determine whether defendants' conduct evidenced a reckless state of mind sufficiently culpable for liability under § 10(b) and Rule 10b–5.

Under other circumstances, this court would remand this issue for reconsideration in light of our decision in *Mansbach*. We choose not to follow that course for two reasons. First, the additional delay which would be occasioned by a remand would further postpone an ultimate resolution of this controversy which has already lingered in the courts for a significant amount of time. Additionally, this court's long and detailed familiarity with what has transpired during the history of this litigation makes it possible for a determination of this essentially legal issue at this judicial level. *See Monroe v. County Board of Education*, 583 F.2d 263, 265 (6th Cir. 1978), *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979).

After a close review of the record on appeal, and taking into consideration the district court's findings of fact which are not clearly erroneous, we hold that defendants' conduct in the Fortune venture was not highly unreasonable conduct which was an extreme departure from the standards of ordinary care evidencing a reckless state of mind. We note briefly in this regard that Fidelity participated in the Fortune transaction to the maximum of its legal rights and derived a maximum profit under Ohio law. In addition, the district court found that the disparity in the shares distributed upon CIC's liquidation derived not from defendants' willful, deceptive acts, but rather from a differing method of mathematical calculation. We do not believe defendants' conduct amounted to actionable recklessness.

### B. Fiduciary Duty Claims

On remand, the district court found defendants had breached their fiduciary duty to Fidelity by permitting services to be

---

**6.** In its order overruling plaintiffs' motion the district court merely stated that no justification existed for joint liability without citing to the record or any law to support its conclusion.

We urge the trial court in the future to give some reason in fact and authority in law to support such conclusions in order to promote meaningful appellate review.

rendered by Fidelity employees to Fortune for which Fidelity received no compensation. The district court found that defendants derived a profit from the Fortune transaction and imposed a constructive trust for the benefit of Fidelity on each defendant. Defendants assert on appeal that the district court erred in finding a breach of duty and in utilizing disgorgement of profits as the measure of damages. On cross-appeal, plaintiffs submit the district court should have imposed joint and several liability on the defendants in lieu of several liability.

It is our view that the district court appropriately applied the legal principles outlined in our prior opinion and its findings of liability should be affirmed.

 It is well accepted law that directors of a corporation occupy a fiduciary relationship to the corporation and its shareholders and are held strictly accountable and liable if the corporate funds or property are wasted or mismanaged due to their inattention to the duties of their trust. When a director breaches his duty of trust and benefits at the expense of the corporation, under Ohio law the director is liable for any profits he received. It matters not that the director acted absent actual fraudulent intent; as long as the director places himself in a position of conflicting loyalties and subsequently violates his primary obligation to the corporation, liability attaches. *See Ohio Drill & Tool Co. v. Johnson*, 498 F.2d 186, 191–92 (6th Cir. 1974); *Seagrave Corp. v. Mount*, 212 F.2d 389, 397 (6th Cir. 1954); *Neinaber v. Katz*, 69 Ohio App. 153, 43 N.E.2d 322 (1st Dist.Ct.App.1942).

 In the present case, the district court found that defendants permitted services to be rendered to Fortune by Fidelity employees for which Fidelity received no compensation. As investors in Fortune, defendants benefited from the successful Fortune promotion while Fidelity was injured to the extent of the unreimbursed expenses. The district court did not err when it concluded a breach of duty had occurred.

Additionally, the district court applied the appropriate measure of damages. In our prior opinion, we held that under Ohio law disgorgement of profits was the appropriate standard for measuring the liability of a corporate director for his breach of fiduciary duty. *Ohio Drill & Tool Co.*, 498 F.2d 186, 191. In this instance, the district court merely applied the law of the case, and correctly so.

 We further hold that the trial court erred when it refused to hold defendants jointly and severally liable for their breach of duty. The facts of this case lend strong support to plaintiffs position that defendants acted in concert in the formation of Fortune; defendants initiated the transaction and carried it through to completion. The law in this area is well settled. Where two or more directors jointly participate in a breach of fiduciary duty, the liability is joint and several. *Nienaber v. Katz*, 69 Ohio App. 153, 43 N.E.2d 322 (1st Dist.Ct.App.1942). *See* W. Fletcher, Cyclopedia of the Law of Private Corporations, § 1102 (rev. perm. ed. 1975). We therefore conclude that the district court inappropriately refused to find the defendants jointly and severally liable for their breach of duty.

## II. AMVETS TRANSACTION

Defendant Zink, while a director and legal counsel for Fidelity, was also an insurance broker. Zink was the exclusive agent of record for AMVETS (American Veterans of World War II and Korea). In this capacity, Zink placed AMVETS insurance business with Fidelity for which he received a commission. The AMVETS insurance contract, though it generated a positive cash flow for Fidelity, was described by the District Court as "in all likelihood, not a profitable business." *Ohio Drill & Tool Co.*, 361 F.Supp. 255, 258–59. Fidelity divested itself of the AMVETS contract in 1971. Plaintiffs submit that Ohio common law requires disgorgement of any profits, specifically commissions, made by Zink because of Zink's failure to completely disclose his involvement in the AMVETS contract.

In its first opinion, the district court found no liability on Zink's behalf since it concluded that the insurance contract was "very fair" and "standard and reasonable" from Fidelity's position. The court found Zink was not paid an excessive commission and that Zink did not place the insurance contract with Fidelity in disregard of the contract's profitability. The district court found no record evidence supporting plaintiffs' allegations. *Ohio Drill & Tool Co.*, 361 F.Supp. at 259.

On appeal, we vacated the district court's determination of this issue finding that the district court had placed the burden of proof on the inappropriate party. We held that since Zink did not completely disclose his involvement in the AMVETS transaction to Fidelity shareholders and all of its directors, Zink had the burden of proof on this issue.[7] Since the district court placed the burden of proof on the plaintiffs, a remand was necessary for reconsideration of this issue.

On remand, the district court found that Zink proved the fairness of the AMVETS transaction. In support of its conclusion, the district court made the following findings:

1. AMVETS was probably not a profitable venture for Fidelity.

2. It is not unusual for group underwritings of this nature to lose money in the early years.

3. Defendant Zink's commissions were not excessive but rather "standard and reasonable" and "very fair."

4. Defendant Zink received the same commission plus an increased expense allowance from Continental Casualty when they took over the AMVETS business.

5. The AMVETS contract was reviewed by the Ohio Department of Insurance prior to Fidelity's acceptance.

6. The Ohio Department of Insurance proxy statement did not require disclosure of commissions paid to directors.

7. The Ohio Department of Insurance recommended that Fidelity divest itself of the AMVETS policy.

8. Other insurance companies sought the AMVETS business when Fidelity terminated its contract.

We hold that the district court's findings are amply supported by record evidence, not clearly erroneous, and substantially support the conclusion that the AMVETS transaction was fair and reasonable to Fidelity and not a breach of Zink's fiduciary duty to place the contract with Fidelity.

### III. CONCLUSION

In summary, we conclude the district court appropriately found that defendants were not in violation of § 10(b)/Rule 10b–5, and that defendants did breach their fiduciary duty when they permitted unconsented services to be performed on Fortune's behalf without reimbursement. With respect to damages, the district court appropriately utilized disgorgement of profits as the measure, but incorrectly refused to hold defendants jointly and severally liable for their breach. Additionally, the district court properly determined that Zink incurred no liability for placing the AMVETS insurance contract with Fidelity.[8] Accordingly, the judgment of the district court is affirmed in part, modified in part, and the case is remanded with instructions to enter judgment consistent with its opinion.

Each party shall bear their own costs.

---

7. The district court placed the burden of proving breach of fiduciary duty on the plaintiffs—normally the place where the burden belongs. However, non-disclosure on Zink's behalf shifted the burden of proof to him and required him to prove the transaction was fair to Fidelity. *See Ohio Drill & Tool Co.*, 498 F.2d at 195.

8. When this case was previously before the court, other claims were in issue. Those issues were either settled or not appealed instantly. To the extent other issues were raised in these cross-appeals and not discussed above, the court is fully advised in their premises and finds them to be without merit.