805 F.2d 1033
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene W. BEESLEY; Jakob Bolleber; Rosalie A. Eppert;
Verlin R. Eppert; Floyd G. Goodman; George A.
Haggarty; Jack G. Lukens; Richard E.
Riebel, Plaintiffs-Appellants
Cross-Appellees,
v.
MANLEY, BENNETT, McDONALD & CO., INC., a Michigan
Corporation, Defendant- Appellee Cross-Appellant
 Nos. 85-1578, 85-1579.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1986.
 
 Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case arises from a proceeding to recover losses growing out of the Penn Square Bank collapse in Oklahoma City, Oklahoma. Various investors in an oil and drilling partnership known as Longhorn & Associates, Ltd. now seek to recoup part of their losses from their broker, Manley, Bennett, McDonald & Co., Inc. They allege the broker fraudulently misrepresented the security offering and recommended purchase without adequate investigation in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. They appeal the district court's grant of summary judgment to Manley, Bennett on these issues; they further appeal the dismissal of their charge that Manley, Bennett engaged in a pattern of racketeering activity in violation of the Racketeering Influenced and Corrupt Organizations Act.
 
 
 2
 Plaintiff investors purchased limited partnership interests in Longhorn for $150,000 a unit through Manley, Bennett. They paid 25% of the total in cash with the remaining 75% secured by an irrevocable letter of credit. When the venture failed, the letters of credit were called. The investors now allege that Manley, Bennett misrepresented the safety of the investment and failed to properly investigate the scheme prior to offering the security for purchase.
 
 
 3
 Specifically, the investors charge that Manley, Bennett misled them by insisting the letters of credit were virtually riskfree based on Longhorn's reputation for never calling letters of credit. They also claim that the broker's reliance on statements by Longhorn management, instead of conducting its own independent inquiry of neutral parties, resulted in an overly optimistic assessment of the financial stability of the project.
 
 
 4
 In order to sustain a private claim for damages under Section 10(b) and Rule 10b-5, the investors must show that Manley, Bennett "1) use[d] ... jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages." Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1026 (6th Cir.1979). The sole element at issue in this controversy is whether Manley, Bennett made misrepresentations with scienter. It is well-settled that we view recklessness as sufficient to meet the scienter requirement. Mansbach, 598 F.2d at 1025; S.E.C. v. Blavin, 760 F.2d 706, 711 (6th Cir.1985). We have defined recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." Ohio Drill & Tool Co. v. Johnson, 625 F.2d 738, 741 (6th Cir.1980) (quoting Mansbach, 598 F.2d at 1025).
 
 
 5
 The district court held that the Longhorn investors failed to present evidence that demonstrated Manley, Bennett recklessly made false statements with the intent to manipulate or deceive. Although the investors complain they were told by the broker that the Longhorn investment was meritorious and that letters of credit would never be called, they offered no documentation to support these allegations. In answer to interrogatories, one of the investors acknowledged there were no documents to support their allegations that Manley, Bennett recklessly misrepresented the degree of risk associated with the investment.
 
 
 6
 With regard to the charge that the broker failed to properly investigate the project, the record reveals that prior to deciding to offer the security to investors, Manley, Bennett discussed the project with Longhorn's accountants, loan officer, attorney, and primary principal, as well as a private researcher and investigator and others familiar with the venture. The district court found the investigation to be extensive and thorough, not reckless. The broker did not rely simply on statements by Longhorn officials, as the investors charged.
 
 
 7
 We find the district court's decision to grant summary judgment to Manley, Bennett on the record before it reasonable. The investors failed to meet the requirements for establishing a violation of Section 10(b) and Rule 10b-5 as enumerated in Mansbach. While, with the aid of hindsight, the belief of the broker that the Longhorn investment would be financially successful now seems woefully misplaced, there is nothing to indicate that Manley, Bennett in any way exhibited "an extreme departure from the standards of ordinary care ... so obvious that any reasonable man would have known it." Ohio Drill, 625 F.2d at 741 (quoting Mansbach, 598 F.2d at 1025).
 
 
 8
 As to the investors' RICO claim, the district court dismissed this count after the investors failed to comply with its order to amend their RICO allegations. The issue was not mentioned in the investors' Notice of Appeal. Consequently, we do not consider the merits of this claim.
 
 
 9
 On appeal of the cross-claim, having considered the record as a whole, the decision of the district court is affirmed.